Feeeman, J.,
delivered the opinion of the Court.
This bill is filed by complainants, creditors of Har-peth Academy, to enforce the collection of their debts by sale of certain lands or lots near the town of Franklin, on the ground that the said corporation had ceased for some eight or ten years to use its franchises and privileges; had kept up no school; had no election of directors o.r officers for that number of years; and was to all intents a “defunct corporation,” to use the language of the bill. The bill is claimed to be filed under s. 3431 of the Code.
A demurrer was filed, setting forth as its grounds that as the bill charged the defendant to be a defunct corporation, it should have alleged the fact that all the creditors of said corporation were before the court, as required by the Code.
The section of the Code does require that in such cases the creditor shall file the bill for himself and *286 other creditors; but as the Chancellor in his final decree directed that notice be given for all other creditors to come in and present their debts, in order that they may share in the proceeds of the property directed to be sold, so that the end of filing the bill on behalf of other creditors is attained, we need not further notice this branch of the case.
The debts are admitted in the answer, and that there has been no exercise of the corporate functions on the part of the corporation, as is charged; but various objections are presented to complainants5 right to have the property sold for their debts.
First, it is insisted that when the money, was borrowed for which the debts were created, it was expressly agreed that they should create no lien on the property now sought to be sold, but that the holders of these notes should look for their payment only to the rents of said institution from year to year, and the aid of the State, then, as is stated, amounting to some $240 per year, as the means for their discharge. The proof tends to show pretty clearly that such was the understanding of the parties at the time. The facts are, that the trustees had incurred a debt of perhaps upwards of $4,000, and for its liquidation, resolved to borrow this amount, and did so with the understanding, as above stated, that the profits of the school or rents, should be applied to its discharge. The school was kept up, and the debts reduced by this means to about $2,000. During the war the buildings were burned, and no rents have since been received, no school being kept up, nor any buildings placed on the lots. In *287 this view of the case, we do not think this defense can he made, as it was fairly to be implied that these means of income should be kept up, and the property so used as to produce an income in the way of rents and profits; the parties failing to do so, cannot insist on this agreement, broken by themselves, as a bar to the enforcement of these debts.
It is nest insisted, that the lands were bound by a trust for educational purposes, arising out of the following state of facts, and that they could not be charged by the corporation with debts created, and are in no way liable for such debts. The facts are, that in the year 1823, certain parties conveyed certain lands to the Trustees of Harpeth Academy and their successors in office, the language of the deed being, “so long as the same shall be kept, used, and enjoyed for the purposes of an academy or school for the instruction and education of youth by said trustees and their successors, and no longer.” It seems, however, that about 1847, the trustees became dissatisfied with the site of the house erected on this ground and determined to dispose of it, and .purchase other lands on which to erect an academy, and that in pursuance of this purpose, they did dispose of the first lot, and purchase the lots now sought to be Sold. It is now claimed that these last purchased lots are held under the trusts, and subject to the restrictions, contained in the first deed above recited. But on looking into the various deeds conveying this last property, we find no restrictions whatever, but only an absolute conveyance in fee simple of the property to the trustees of Har- *288 peth Academy, to them and their successors forever; so, that their title to this property, so far as appears in this record, is free from all restraints or limitations on the face of the deeds conveying it, and as between the creditors and the trustees, it stands simply as property owned by trustees of an educational corporation, with no exemptions whatever from liability, any more than any other property owned by such corporation.
It is next insisted that the officers of this corporation had no legal power to borrow money, and that the persons concerned knew this, or were bound to know it, and that the officers of the corporation had no power to bind this property for the payment of this debt.
We have seen that in the title by which they held this property there was no restriction upon the trustees either as to selling or mortgaging it, nor any exemption of the property from liability for debts of the corporation.
As to the powers of the corporation or its officers to1 borrow money, we think that, in the language quoted from Story on Bills, in the case of Union Bank v. Jacobs, 6 Hum., 521, the power, might be fairly implied as a usual and appropriate means to accomplish the objects of the charter. We do not hold that as to the pi'operty originally donated to the trustees, this debt could have been enforced against the land, or that where the land was conveyed specially for the purpose of a site for a school-house, the trustees might charge it with debts, and thus divert it from the objects of the trust; but that in this case, the land *289 being purchased by the board of trustees, with no restrictions on the power of sale or disposition, and probably with this very money, or a portion of it; and the corporation having ceased to use its privileges and franchises, and this property being the only means for repayment, it cannot under the circumstances be held exempt from the claims of creditors.
The decree will be affirmed, and the costs paid out of the proceeds of the land, which will be ordered to be sold.
Note. For implied power of corporations to borrow money and execute negotiable paper, see also Bank of Chilicothe v. Chilicothe, 7 Ohio, 358; Mills v. Gleason, 11 Wis., 470; State v. Madison City, 7 Wis., 688; Ketchum v. Buffalo, 14 N. Y., 356; People v. Brennan, 39 Barb., 522; Clark v. School District, 3 R. I., 199; Douglass v. Virginia City, 5 Nevada, 147; Commonwealth v. Pittsburgh, 34 Penn. St., 496;; Parsons on Bills & Notes, p. 164.
As to the defense of ultra vires, see Bank of Chilicothe v. Chilicothe, 7 Ohio, 358; Bissell v Michigan Southern R. R. Co., 22 N. Y., 258; and 2 Col, 661.