## Case No. 5,756.

### GREEN v. DYERSBURG.

[2 Flip. 477.] [1]

Circuit Court, W. D. Tennessee.    July 5, 1879.

MUNICIPAL BONDS — RAILROAD SUBSCRIPTION — CONST. TENN. ART. 2, § 29—ACT 1842, CH. 117 (CODE, § 1142)—IMPLIED POWER TO ISSUE BONDS CONDITION PRECEDENT—RULES OF CONSTRUCTION—REASONABLE TIME.

1. Where a town is authorized by statute to subscribe to the capital stock of a railroad company and is required to pay the subscription in "not exceeding" six annual installments, and is further authorized to anticipate the collection of taxes by issuing "short bonds" bearing six per cent. interest: *Held*, that the proper construction of the act requires the bonds to mature at a date not longer than the assessments of taxes are due and payable; and that bonds payable in ten years and bearing seven per cent. interest are unauthorized by the act.    These requirements are not directory only, but imperative, and must be complied with by the town.    The bonds on their face show non-compliance with the statute, and there can be no bona fide holder for value of such bonds.

[Cited in Kelly v. Town of Milan, 21 Fed. 858.]

2. Neither section 29, of article 2 of the constitution of Tennessee of 1870, nor the act of January 23, 1871, c. 50 (Code, § 491a), passed to enforce it, confers any power upon municipal corporations to issue bonds in payment of a stock subscription to railroads.    The only effect of that act is to require a three-fourths vote of the citizens of the town as a pre-requisite, and to designate the county court or the board of mayor and aldermen as the agents to execute whatever powers exist in the particular case.    The powers must be found elsewhere in the statutes.    Nor does the first clause of the second sub-section of the act confer any power to issue bonds under the second clause of the sub-section relating to stock subscriptions, even if the first clause can be held to authorize in itself bonds to be issued, when "credit is given or loaned" in aid of a railroad. Giving or lending credit, and subscribing stock, are essentially different.

3. This act, as modified by the constitution and subsequent legislation, is the general law under which all corporations must act in subscribing stock to railroads.    It confers no express power to issue bonds in payment of the subscriptions, and unless such power is conferred by some other enactment no corporation can issue bonds in payment of a subscription to capital stock, but must pursue the requirements of this act.    There is no statute conferring any express power on the town of Dyersburg to pay its subscription to the Paducah & Memphis Railroad Company's capital stock in ten years' bonds, bearing seven per cent. interest, and none can be implied from the authority conferred upon it by this act and its amendments.

4. There is no implied power in a municipal corporation to issue negotiable bonds in payment of a debt which it is authorized to contract.    No decision of the supreme court of the United States or of the supreme court of Tennessee has so adjudicated; and, in the absence of any controlling decision to that effect, this court holds that the power must be expressly conferred, or necessarily implied, from some power given other than the bare authority to contract a debt for a particular purpose, whether it be a corporate purpose or not.    Public safety requires that the implications in favor of such power shall not be extended beyond the point to which they have already gone.    Bona fide holders will be protected

against the irregular exercise of granted authority, but the authority itself should not be created by judicial decree upon unnecessary implication.

[Cited in Kelly v. Town of Milan, 21 Fed. 855; Norton v. Taxing Dist. of Brownsville, 36 Fed. 102.]

5. Where a bond upon its face promises to pay a sum of money to a railroad company "upon the express condition, however, that said railroad shall be constructed to the town of Dyersburg, Tennessee, and have a depot of said railroad located within half a mile of the court house in said town," it is a condition precedent to the payment of the money, and not a mere covenant of the railroad company to so construct the road, for the breach of which compensation in damages is the remedy.    No holder of the coupons can recover on them without showing either the performance or a readiness to perform the condition. The bond itself charges the purchaser with notice of the condition, and it is he that trusts the railroad company, and not the town.

6. It is a universal rule of construction of such instruments that the actual intention of the parties will prevail over that reached by any technical rules prescribed for ascertaining the intention.    And, therefore, neither the rule that, if part of the money be payable before the covenant on the other side is to be performed; nor the other rule that, if the promisor has received part of the consideration, the covenants shall be held to be independent of each other, will override the intention manifested by the contract that the railroad should be built before the money can be demanded.    These rules have always yielded to a clear manifestation of a different intention.    The rule as to payment by installment does not apply to installments of interest, but only where the principal is so payable.    The rule as to part performance does not apply where the part unperformed is the essential consideration.

7. If no time be specified for the performance of the condition to construct the road, the law implies a reasonable time.    And, when the amendment to the charter of the company of January 27, 1870 (chapter 49, § 5), required the road to be completed within seven years from that date, this will be taken as the time within which the condition should be performed, the bonds being dated on the 10th of May, 1873, and subsequent to the amendment.

On the 21st day of March, 1878, in the United States circuit court at Memphis suit was brought upon past-due coupons of bonds, issued by the town of Dyersburg, of which the following are samples, both of the bonds and coupons:

"(Coupon $8.75.)

"The mayor and aldermen of Dyersburg, Tenn., will pay the bearer on the 10th day of Nov., 1873, eight dollars and seventy-five cents, being the semi-annual interest due on Paducah & Memphis Railroad bond No. 9654.                    C. P. Clark, Mayor.

"W. C. Doyle, Recorder."

"(Bond No. 9654.)                    ($250.00.)

"The mayor and aldermen of the town of Dyersburg, in the state of Tennessee, a corporation duly chartered by act of the general assembly of the state of Tennessee, by the qualified voters of said town, under the provisions of an act of the legislature empowering them so to do, by this bond promise to pay to the holder hereof, ten years after the date hereof, the sum of two hundred and fifty dollars, with interest at seven

per centum per annum from this date, payable semi-annually at the city hall in Dyersburg, on presentation of the coupons hereto attached, to aid in the construction of the Paducah & Memphis Railroad; upon the express condition, however, that the said railroad shall be constructed to the town of Dyersburg, Tennessee, and have a depot of said railroad located within half a mile of the court house in said town.

"In testimony whereof, etc., this the 10th day of May, 1873.

"(Seal.)               C. P. Clark, Mayor.

"W. C. Doyle, Recorder."

The defendant corporation filed six pleas to the declaration:

1. The first plea sets out the application of the railroad company for a subscription of $50,000 to its capital stock to be paid in ten-year coupon bonds, at seven per cent. interest, to aid in the construction of the road through Dyer county; the passage of an ordinance submitting the proposition to the voters of the town to subscribe and pay for the stock upon certain conditions, among others the following: "The above subscription is made on the condition that the Paducah & Memphis Railroad is to be located and built to Dyersburg, and a depot of said road to be located within one-half mile of the court house without which condition accepted by the said railroad company, this subscription to be void and no bonds shall be issued; and this condition shall be written or printed if deemed necessary, by the mayor on the face of said bonds. The acceptance, by the officers of said railroad company of any portion of the bonds herein authorized to be issued shall bind said company fully to the terms and conditions of said subscription, as set forth in all the sections of this ordinance; the ratification of this proposition, by the voters at an election; the passage of an ordinance authorizing the mayor to subscribe for the stock upon the condition imposed by the ordinance; the application to the company to subscribe on the terms and conditions mentioned; the acceptance by it of the proposition and the spreading on the minutes of the railroad company of the proceedings of the board of mayor and aldermen of the town at the time of this acceptance." The plea then avers that the conditions upon which the town was authorized to become a stockholder, have never been complied with by the railroad company, without which the defendant corporation had no authority to issue the bonds, and the coupons sued on are not its act and deed.

2. The second plea is a simple plea of non est factum.

3. The third plea, after setting out the same facts as those stated in the first plea, avers that the bonds had printed on their face, the said condition, in the following words, to-wit: "Upon the express condition,

however, that said railroad shall be constructed to the town of Dyersburg, Tennessee, and have a depot located within half a mile of the court house in said town;" that there was no other or different authority to issue the bonds, and no other or different consideration than that set out in the plea; that the bonds were delivered to the plaintiff [Thomas Green] or his assignors by the railroad company without the knowledge of or consent of the defendant corporation and without any authority from it; that at the time of said delivery, the company had not built its road to Dyersburg, nor located a depot within half a mile of the court house, nor has it at any time since done so, of all which the plaintiff had notice; that the coupons sued on are the coupons of the said bonds and none other; that the stock of the company had become worthless and the corporation dissolved by the foreclosure of a mortgage made by it, and on the purchase of its property and franchises by a new company; and therefore that the consideration had wholly failed, of which plaintiff had notice.

4. The fourth plea craves oyer of the coupons and bonds and sets them out in haec verba, and then avers that the defendant corporation had never been authorized by any law of the general assembly of the state of Tennessee. nor by any election of the qualified voters of the town to lend its aid to said railroad company by the issuance of the bonds aforesaid, as required by the 29th section of article 2 of the constitution of the state, of which plaintiff had notice.

5. The fifth plea craves oyer and sets out the bonds and coupons, and avers that the whole series of $50,000 bonds was delivered to the railroad company on the express condition that they were not to be negotiated, nor to become due and payable, except upon the express condition that the railroad should be constructed to the town of Dyersburg and a depot located within half a mile of the court house, and avers that this never has been done.

6. The sixth plea avers that the defendant corporation did not undertake and promise in manner and form, etc.; to which plaintiff has joined issue.

The plaintiff demurs to the first five pleas, and assigns the following grounds:

1. To the first plea, that the conditions mentioned, that the railroad should be built to Dyersburg, and its depot located within half a mile of the court house, were not conditions the execution or performance of which were precedent to the issuance of the bonds, nor to the liability of the defendant on them, but only a condition that the company should accept the terms of the subscription by agreeing to build the road to the town and locate the depot within half a mile of the court house.

2. To the second plea. that being a plea of non est factum it is not sworn to.

3. To the third plea: First, the same ground of demurrer as that taken to the first plea, as above stated, viz., that the plea shows that the company accepted the terms of the subscription which was the only condition precedent to the issuance of the bonds as shown by the plea; second, that the plea is double in pleading a want of compliance with an alleged condition precedent, and at the same time a failure of consideration; third, that on the averments of the plea itself the plaintiff is shown to be an innocent purchaser for value without notice.

4. To the fourth plea: That on the face of the plea it is shown that an election was held, and that the legislature of Tennessee had by law authorized the bonds to be issued.

5. To the fifth plea: That it appears by the plea that the plaintiff was an innocent purchaser for value without notice.

The charter of the railroad company authorizes corporations, cities and counties to subscribe stock, but contains no authority for municipal corporations to issue bonds unless it is implied from the power to subscribe. Chapter 42, § 30; Acts 1858, p. 79. The general railroad subscription laws, authorizing all counties and incorporated towns to subscribe for stock, contains no express power to issue bonds in payment of such subscriptions, but requires the levy of a tax to meet the installments of subscription, as made, and directs the tax collector, as fast as he makes collections, to pay the amounts over to the company. And to meet unexpected contingencies, the corporation may anticipate the collection of the railroad tax by issuing warrants bearing six per cent. interest, payable at such times as may be desired by the railroad company, the warrants to be received in payment of the stock. Thomp. & S. Code, §§ 1142–1165. By an act of March 13, 1868 (chapter 72, § 4), section 1148 of the Code was amended by adding to it the words "and shall issue the bonds when called for;" and by an act (found among the Private Acts) of December 9, 1868 (chapter 11, § 26), said section 1148 was subsequently and further amended by omitting the words "and shall issue the bonds when called for," thereby leaving the section as it was before the amendment of March 13, 1866, except as to matter not pertinent here. By section 29, art. 2, of the constitution of 1870, which went into effect May 5 of that year, is is ordained that "the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election and the assent of a like majority." The act of January 23, 1871, entitled "An act to enforce section 29, article II., of the constitution," c. 50 (Thomp. & S. Code, § 491a), enacts that the counties and incorporated towns in the state may impose taxes for county and corporate purposes upon the conditions named therein, one of which is— "Second: The credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except, first, upon the consent of a majority of * * * the board of mayor and aldermen * * * of such city or town, and upon an election afterwards held by the qualified voters of said * * * city or town, and the assent of three-fourths of the votes cast at said election; * * * and if the assent of three-fourths of the voters of such * * * city or town is had, then the * * * board of mayor and aldermen * * * shall have full power to make and execute all necessary orders, bonds, and payments in order to carry out such loan or credit voted for as prescribed in this act; nor shall any county, city or town become a stockholder with others in any company, association or corporation, except upon a like election and the assent of a like majority as prescribed in this act." By the act of February 26, 1869, c. 59, § 20 [Acts Tenn. 1868–69, p. 311], it was enacted "that it shall be lawful for the town of Dyersburg to make a corporate subscription to the capital stock of the Mississippi River Railroad Company (afterwards the Paducah & Memphis Railroad Company) not to exceed fifty thousand dollars in amount, payable in not exceeding four years, by annual assessments levied by the board of trustees of said town, and collected as other moneys are, and bonds of the town may be issued in anticipation of such collections, collected for town purposes," with a proviso that there shall be a previous election, and the subscriptions authorized by a majority vote. By the act of February 8, 1870, c. 55, § 18 [Acts Tenn. 1869–70, p. 363], relating to the subscription of Haywood and Dyer counties to the Brownsville & Ohio, and to the Mississippi River Railroad Companies, it was enacted: "That stock which had been subscribed, or may hereafter be subscribed by any county, city or incorporation to said railroad companies, may be payable in six annual payments; and it shall be lawful for county courts and the corporate authorities of any city or town, making such subscription, to issue short bonds, bearing interest at the rate of six per centum per annum, to said railroad companies in anticipation of the collection of annual levies, if thereby the construction of the roads can be facilitated." By the act of December 16, 1871, c. 122 [Acts Tenn. 1871, p. 133], where an election previously held, had authorized a subscription to the capital stock by as much as three-fourths of the qualified voters, so that the election would be within the constitutional requirement as to the number of votes to authorize a subscription, "such sub-

scription shall be deemed a valid and legal subscription," notwithstanding the same was in excess of the amount authorized by the Code, § 1142 et seq.; this act also allowed a new vote to be taken in case of doubt. And by the act of December 15, 1871, c. 129 [Acts Tenn. 1871, p. 142], these sections of the Code were still further repealed and modified as to the restrictions on the amount of subscriptions authorized, but neither of these acts authorize in terms any bonds to be issued. The averments in the pleadings do not show that anything was done under the special act of February 26, 1869 (chapter 59, § 20), but it is stated in argument and does appear by the record of the proceedings of the town, which is referred to in the pleas, that on the 12th day of September, 1871, an election was held authorizing a subscription to this railroad company of $50,000, which "was held" to be illegal because excessive in amount; but it does not appear by said record of town proceedings that the subscription voted on that day was to be paid in bonds. This appears to be the fact, however, as to the election of July 5, 1872, on the result of which these bonds were in fact issued.

Humes & Poston and J. P. Meux, for plaintiff.

Harris, McKisick & Turley, for defendant.

HAMMOND, District Judge. Some of the grounds of this demurrer, as stated, are rather in the nature of replications, but I shall treat it as raising the questions made in the argument.

The first question is, as to the power of the town to issue these bonds. The supreme court have declared that "a municipal corporation cannot issue bonds in aid of extraneous objects without legislative authority, of which all persons dealing with such bonds must take notice at their peril." Town of South Ottawa v. Perkins, 94 U. S. 260–262. And they are equally invalid in the hands of innocent purchasers. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676. The argument of the defendant's counsel denying the legislative authority to issue these bonds is based upon a distinction between paying for a subscription to the capital stock of the railroad company by levying taxes and paying the money, and issuing bonds in payment of the subscription; and it is contended that there being no express power granted to issue bonds in payment of subscription to stock, none will be implied; and the case of Police Jury v. Britton, 15 Wall. [82 U. S.] 566, and the cases cited in Dill. Mun. Corp. § 407, and note, and Folsom v. School Dist. [91 Ill. 402], are relied on. The plaintiff contends that the statutes referred to in the statement of the case, confer express power to issue these bonds, and, if not, then that the power is a necessary implication from the authority given to make the subscription to the capital stock of the railroad company.

The act of March 13, 1868, amending the Code, would undoubtedly have been sufficient to support these bonds, if it had not been subsequently modified by the act of December 9, 1868 (chapter 11, § 26). The act of December 16, 1871, does not confer any new power, or enlarge the powers of the town in the matter of issuing bonds. It clearly contemplates subscription under the Code, § 1142 et seq., and only removes the restrictions there found as to the amount allowed to be subscribed by the town. The recital in the record of the town proceedings referring to the election of September, 1871, and the act of December 16, 1871, authorizing them to re-vote the subscription, shows conclusively that the town authorities supposed that they were making this subscription under the provisions of the Code, § 1142 et seq., as modified by the special acts relating to this particular town, as no doubt they were. Neither is there anything in the act of December 15, 1871 (chapter 129), which confers on this town the power to issue these bonds, nor anything from which such power may be implied.

The act of February 26, 1869 (chapter 59, § 20), as modified by the act of February 8, 1870 (chapter 55, § 18), unquestionably authorizes the town to issue short bonds, whatever that may mean, bearing six per cent. interest, "in anticipation of the collection of the annual levies." By the very terms of these acts the subscription is payable in four or six years, and I think the proper construction is, that the bonds shall not be longer running to maturity than the time within which the subscription is payable. The bonds are only to anticipate the annual collections of taxes to pay the subscription, which must all be paid "in not exceeding" four or six years. The legislature did not contemplate that the people should be burdened with a long debt, bearing interest from date, when the statute required that the taxes to pay the subscription should be levied and paid within a time specified in the act itself. If bonds were issued under the power conferred by these statutes, necessarily they must be payable when the taxes levied to pay them are collected, for it is not to be supposed that the town would be required to levy and collect the taxes and keep them in the treasury idle to meet bonds maturing years after the collections are made. It is not like the case of State v. Anderson Co., Sup. Ct. Tenn. 1874, at Knoxville [8 Baxt. 249], where the statute authorized thirty years' bonds to be issued, and the county in exact compliance with the statute issued bonds for that time, but upon a vote of the people proposing to pay the subscription in six annual installments. At the time the vote was taken in that case, the statute made no other requirement as to the time of payment than that not more than thirty-three and one-third per cent. of the subscription should be collected in one year. Act 1852, c. 117, § 8 [Acts Tenn. 1851–52, p. 163], Code, § 1154. Here the requirement of

the statute was that the amount should be paid in six years. There a subsequent statute varied the terms which the vote had fixed; here the vote varies the terms which the statute has fixed. Nor is this like the case of Louisville & N. R. Co. v. Davidson Co., 1 Sneed, 638, where it was held that the act of 1852 did not prohibit the county from making more than three installments. A comparison of section 8, c. 117, of the act of 1852, with section 20, c. 59, of the act of 1869, and with section 18, c. 55, of the act of 1870, shows that while, under the act of 1852, there was no other restriction than that the time was not to be less than three years, under the two latter acts the time fixed is "not exceeding" six years. This is the necessary construction of the two acts of 1869 and 1870 taken together, even if it be admitted that the act of 1870, applying to "any city or incorporation" was intended to modify the special act of 1869 applying only to the town of Dyersburg. In this view the departure from these acts cannot be regarded as falling within the fourth resolution of the court in Louisville & N. R. Co. v. Davidson Co., supra. The principle of directory statutes cannot be applied here, and the authority conferred must be pursued in its material requirements. Winston v. Tennessee & P. R. Co., 1 Baxt. 61.

Besides these acts only allowed six per cent. interest, and the bonds here bear seven per cent. This cannot be a change within the discretion of the town to make—it is an additional burden, not a beneficial modification of the requirements of the statute. I am not unmindful of the conventional interest act of February 23, 1870, c. 69 [Laws Tenn. 1870, p. 87], allowing an increase by contract to any rate, not greater than ten per cent. It will be observed that the first of these Dyersburg acts fixed no rate of interest for the bonds, and the second, limiting the rate to six per cent., was passed only a few days before the conventional rate of interest act just referred to, the latter being a general public law and the former a special private act. I do not think, under the general law, the town could enlarge the rate of interest. It was a municipal corporation acting under a special grant of power which could not be exceeded. The result is that these bonds, being for a longer time and greater rate of interest than allowed under these two acts, cannot be supported by them. Bell v. Mobile & O. R. Co., 4 Wall. [71 U. S.] 598; New Albany v. Burke, 11 Wall. [78 U. S.] 96. The case does not come within the case of Township of Rock Creek v. Strong, 96 U. S. 271, and Commissioners of Marion Co. v. Clark, 94 U. S. 278, where there was a substantial compliance with the legislative requirement. Dill. Mun. Corp. § 414. It may be that if the bonds had been issued according to the terms of the act they would be valid pro tanto for six per cent. interest, as ruled in City of Quincy v. Warfield, 25 Ill. 317; but in the exercise of these special

powers to impose the burdens of taxation upon a community, corporations should be held to a strict exercise of them, particularly in view of the peril to which the community is subject by a fraudulent use of such powers. Any purchaser of these bonds in looking to these statutes would see at once that the bonds were not such as the statutes contemplated. Marsh v. Fulton Co., supra.

The remaining claim for express power to issue these bonds is based on the act of January 23, 1871, c. 50 (Code, § 491a). It is argued for the plaintiff that the last clause of the second sub-section of section 1 of that act authorizes a town to subscribe for stock, and that the clause, immediately preceding, authorizes the board of mayor and aldermen to issue bonds in payment. It is manifest, however, that this construction is strained and wholly unauthorized by either the grammatical structure of the section or by any natural interpretation of it. The section follows identically the language of the constitution in its restrictive clauses, and it is evident that both intend to indicate two corporate methods of giving aid to other persons or corporations; one of these methods—that of becoming a stockholder in a company—had been, so far as relates to encouragement of railroad building by stock subscriptions, regulated by a general law, since the act of January 22, 1852 (chapter 117); often, however, modified by special acts in particular cases (section 1142 et seq.), the other method, that of giving or lending the credit of the city or town, had never been the subject of any general statute, and was always regulated by special acts in particular cases. The two methods are entirely distinct in their nature and essential ingredients. Louisville & N. R. Co. v. State, 8 Heisk. 663, and cases cited arguendo, p. 667. It happens that as to railroad building, they both aid and encourage it; but the constitution and the act apply to all corporate contracts within the scope of "corporate purposes" and to none other. Neither confers any authority either to lend credit or subscribe stock. But if the authority exists elsewhere this act regulates its exercise according to the constitution and designates the county court and the board of mayor and aldermen as the agents who shall issue the bonds when credit is lent or given. The validity of these railroad bonds and subscriptions all depend on the construction given by the supreme court to the old constitution, that the promotion of railroads is a legitimate "corporate purpose," and not upon any legislative power to authorize corporations to engage in extraneous enterprises. Nichol v. Mayor, etc., of Nashville, 9 Humph. 251; Louisville & N. R. Co. v. Davidson Co., supra.

Interpreting the constitutional restrictions of 1870 and this act passed to enforce them by the previous legislative and judicial decisions, this giving or lending the credit of a county, city or town to some other person,

company, association or corporation means supporting the credit of such other person, etc., by guaranties, indorsements or contracts of like character, and possibly donations or loans in aid of the enterprise, which must be a corporate purpose. Dill. Mun. Corp. § 393; Nichol v. Mayor, etc., of Nashville, 9 Humph. 251, and cases cited in Cooper's edition; Louisville & N. R. Co. v. Davidson Co., supra. The credit cannot be given or lent nor the subscription be made upon the authority of this act, for it confers none. It regulates in certain respects the general subject, and harmonizes all the statutes with the constitution. When the corporation subscribes for stock, it must follow the general law on that subject, or some special law provided for it. The only effect of this act, or the constitutional provision referred to in it on the general law—and it so affects all special laws as well—is to abrogate all provisions allowing the subscription for stock to be made on less than a three-fourths vote of the qualified electors, voting at the election in favor of it. In all other respects the statutes authorizing subscriptions remain as they were before this act was passed. I am, therefore, of opinion that there is no express authority given by any statute to the town of Dyersburg to issue these bonds.

It is insisted by the plaintiff that there is a power to pay the subscription in bonds to be implied from the authority to make the subscription, whether we look to the authority as contained in the railroad charter or to the general law authorizing such subscriptions. The authorities on this question are conflicting. Dill. Mun. Corp. §§ 83, 106; Dill. Mun. Bonds, § 62; Daniel, Neg. Inst. §§ 1530, 1532, 1533. I do not think there is any case decided by the supreme court of the United States which supports such an implied power under a general law containing the restrictions found in these Tennessee statutes. Code, §§ 1142–1165. And where the mode of payment is pointed out as is done here, I hold that any other mode is excluded, and that a bare power to subscribe for stock does not imply a power to pay for it in negotiable bonds issued to the railroad company on such terms as the parties may agree upon. The intimation in Hitchcock v. Galveston, 96 U. S. 341, if it does not militate against such an implied power is the latest indication in favor of it, but I find no decision of that court sustaining it. In Seybert v. Pittsburg, 1 Wall. [68 U. S.] 272, the implication was upon an act authorizing a subscription "as fully as any individual," and in Meyer v. Muscatine, Id. 384, the implication was upon a power "to borrow money," coupled with a general law authorizing railroads "receiving bonds of any city" to sell them at a discount. Id. 221. In Rogers v. Burlington, 3 Wall. [70 U. S.] 654, and Mitchell v. Burlington, 4 Wall. [71 U. S.] 270, the implication was upon a power "to borrow money for any public purpose," and in Smith Co. v. Sac, 11 Wall.

[78 U. S.] 139–156, the statement of the proposition appears in the dissenting opinion only, the case being decided on other grounds. In Lynde v. Winnebago Co., 16 Wall. [83 U. S.] 6, the implication was upon a statutory power to borrow money. In the Tennessee statutes, now under consideration, there is no power given to borrow money, nor to subscribe for stock as fully as an individual. On the contrary, the subscription for stock is regulated by a statute prescribing the mode of payment. The power to borrow money will not be implied. Mayor v. Ray, 19 Wall. [60 U. S.] 468, 475. It may be doubted if any case hereafter will extend this implication of power to issue bonds any further than it has already gone. 2 Daniel, Neg. Inst. §§ 1523, 1532; Dill. Mun. Bonds, § 6.

The legislative construction in Tennessee is against any such implied power; and ever since the act of January 22, 1852, granting power to subscribe stock as therein specified, it has been the constant practice to confer express power to issue bonds to pay for stock subscriptions whenever thought advisable, as was done by the act of December 30, 1853, amending the general act of January 22, 1852, to allow Sumner county to pay her subscriptions. Louisville & N. R. Co. v. Davidson Co., 1 Sneed, 661. Very many such acts have been passed, and as we have seen, there is special legislation as to Dyersburg. This would seem to exclude any legislative sanction of the doctrine of an implied power based on the general authority given to make these subscriptions. It is said by the supreme court of Tennessee in Moss v. Harpeth Academy, 7 Heisk. 283, of a private corporation, that there is an implied power to borrow money to carry out the purposes of its organization, and it is shown by a note to that case, that other courts have applied this doctrine to municipal corporations, notably the case of State v. Pinto, 7 Ohio St. 358, cited by counsel here. And see, also, Dill. Mun. Corp. §§ 106, 107, and notes, and § 407.

There seems to me to be a vast distinction between using private funds, and implying this power to borrow money upon negotiable bonds against a body of people who have organized a municipal corporation with limited powers of taxation for special purposes. Yet, the supreme court of Tennessee have said in the case of Adams v. Memphis & L. R. Co., 2 Cold. 645–650, that there is an implied power to borrow money for corporation purposes belonging to municipal corporations. And, relying upon the settled doctrine in Tennessee that railroad building is a corporate purpose, the learned counsel for plaintiff presses with great earnestness the doctrines of that case. We are asked, upon its authority, to imply a power to borrow money for this corporate purpose, and then again to imply from the power to borrow money the power to issue negotiable bonds. In Nashville v. Ray, 19 Wall. [60 U. S.] 479, it is said that this declaration of the supreme court of Ten-

nessee in Adams v. Memphis & L. R. Co., supra, was not necessary to the decision of the case, as it clearly was not. The case of Nichol v. Mayor, etc., of Nashville, supra, does not support the implied power to issue bonds where authority to subscribe stock is given under a statute appointing the mode of payment. In that case there was express power to issue the bonds, and even if it had been necessary to their support to rely on any implication of power, the charter of the railroad company in that case authorized corporations to subscribe stock "with all the rights of any other stockholder." This is directly within the case of Seybert v. Pittsburg, supra, where the words were "as fully as any individual." Here there are no such words, either in the railroad charter or in the act of 1852, under which this town acted. There are decided expressions in the case (pages 262, 263) in favor of powers by construction, but confessedly they did not arise, and we have the authority of the same court for saying that "the reasoning, illustrations or references contained in the opinion of a court are not authority, not precedent, but only the points in judgment arising in the particular case before the court." Louisville & N. R. Co. v. Davidson Co., supra. The case of State v. Anderson Co., supra, is much relied on by plaintiff. This is also a case in which there was express power to issue the bonds, and they were issued in exact conformity to the statute. There is a very strong expression in the opinion in this case in favor of the incidental right to issue bonds or other commercial evidence of debt, wherever the power to contract is given, but it is manifest that the case is not an adjudication on the point, and it could not have been, for there was no want of a positive grant of power to issue the bonds, and the decision is put upon that ground. I am unwilling to adjudicate in the absence of a controlling authority that a municipal corporation has power to issue coupon bonds in payment of any debt it is authorized to contract. No case that I have found decided, either by the United States supreme court or the supreme court of Tennessee, has gone that far as an adjudication. And after a most patient and deliberate examination of the subject, I am of the opinion that the defendant corporation had no power to issue these bonds to be implied from the authority to subscribe stock. This judgment is supported by the reasoning in the case of Gause v. Clarksville [Case No. 5,276], where the question is examined by Judges Dillon and Treat upon authority and principle. The opinion of one of the learned judges in that case, as shown in the second division of the opinion, would seem to be against the views here expressed, but I think there is here in Tennessee no universal practice to issue bonds without special authority, as in Missouri, in payment of stock subscriptions. And I have endeavored to show that the

United States supreme court have not yet decided in favor of any such implication of power. Until it decides the point, I cannot yield my own strong convictions against the doctrine, acquired by this investigation.

I have also considered the other question, raised by the pleadings, as to the effect of the condition mentioned in the face of the bond. These coupons not containing on their face the condition expressed in the bonds, unless the reference to the number of the bond is to be so taken, the first question argued is, whether they are affected by the recital in the bond? If this can be regarded as an open question since the case of McClure v. Township of Oxford, 94 U. S. 429, it is not raised by the demurrer. Harshman v. Bates Co., 92 U. S. 569. The third, fourth and fifth pleas aver that the plaintiff had notice of the condition and its breach. He may have had such notice otherwise than by the expression of this condition on the face of the bond. The demurrer admits this averment of notice, and the only question is, whether the facts stated constitute a defense. It is not denied by the plaintiff that, if this be a condition precedent to the payment of the bonds, they are not negotiable and are subject to all the defenses which could have been made against them in the hands of the original holder. Indeed, as the pleas charge notice of the failure to comply with the contract on the part of the railroad company, the case must be treated as if the railroad company itself were the plaintiff. So many decisions have been made upon the vexed question of what are, and what are not, dependent covenants, that, being irreconcilable with one another, they rather perplex than aid the judgment in determining a given case. That the intent of the parties is to control is a universal rule. Officer v. Sims, 2 Heisk. 501; Grant v. Johnson, 5 N. Y. 247, 255. The intention is to be ascertained from the contract; there is nothing technical in it. The parties have a right to make their agreements dependent or independent, and as they make them the courts are bound to enforce them. Commissioners of Clermont Co. v. Robb, 5 Ohio, 491. Where parties have made an express contract none can be implied, is an axiom in the law particularly applicable to this subject. Cutter v. Powell, 2 Smith, Lead. Cas. 1; Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. [75 U. S.] 276. In the notes to Pordage v. Cole, 1 Saund. 319, 320a, Sergeant Williams has deduced from the cases certain rules for ascertaining the intention, which have all the force of judicial decision because they have been referred to and adopted by almost every court considering the subject from that day to this. But in the application of these rules the courts have great difficulties, and there is no subject in our jurisprudence more beset with conflicting decisions. The difficulty is determining whether one promise be the consideration for another, or whether the

performance and not the mere promise be the consideration. As in this case, was the construction of the railroad to Dyersburg or the undertaking of the company to construct it to that place the consideration of these bonds? It is said that this is to be determined by the intention and meaning of the parties as shown in the face of the instrument, and by the application of common sense to each particular case. Chit. Cont. (11th Ed.) 1082; Stavers v. Curling. 3 Bing. N. C. 355; Taylor v. Mason, 9 Wheat. [22 U. S.] 327. The court will not confine itself to particular expressions but will collect the intention from the whole instrument. Chit. Cont. 122. And every part must have its effect. Id.; Henschel v. Mahler, 3 Denio, 423, 431; Heywood v. Perrin, 10 Pick. 228. Where there are mutual covenants or acts they are construed to be dependent, unless a contrary intention appears, and there is good sense as well as practical convenience in the rule. McNeill v. Magee [Case No. 8,915]. The supreme court of the United States • have said that although many nice distinctions are to be found in the books upon the question "whether the covenants or promises of the respective parties to the contract are to be considered independent or dependent: yet, it is evident the inclination of courts has strongly favored the latter construction, as being obviously the most just. The seller ought not to be compelled to part with his property without receiving the consideration; nor the purchaser to part with his money without an equitable return." Bank of Columbia v. Hagner, 1 Pet. [26 U. S.] 455, 465. This is said in a case of vendor and vendee of an estate, but it applies as well to all contracts. It is undoubtedly true that in cases involving the forfeiture of estates, and perhaps in ordinary commercial contracts, where the language of an agreement can be resolved into a covenant, the judicial inclination is to so construe it. And where a party has another remedy for an injury inflicted by the non-performance of a condition, which may be compensated in pecuniary damages, he will be remitted to that remedy. Paschall v. Passmore, 15 Pa. St. 295, 307. The reason of this distinction is stated to be that the other consideration prevents the court from dealing out justice to the parties according to the equities of the case. Front Street, M. & O. R. Co. v. Butler, 50 Cal. 575. But this doctrine appertains rather to courts of equity than those of law, and can never be invoked to destroy the clear intention of the parties, and where the enforcement of the rule would operate to inflict injustice on the other side. In a case like this there can be no compensation in damages. How could this town be compensated in damages by a failure to build a railroad to it? Nothing less than money enough to build the entire road from Paducah to Memphis would answer as compensation, in case of total failure to build it. The

object of this subscription was to secure the road to that town, and whatever they may have technically expressed by their contract. I have no doubt they intended to secure the construction of this road by making their contribution dependent upon the performance of the condition, and did not intend to rely upon any mere covenant on the part of the railroad company secured against a breach by an action for damages. Where the acts stipulated to be done are to be done at different times the stipulations are to be construed as independent of each other. Goldsborough v. Orr. 8 Wheat. [21 U. S.] 217. This rule is not inflexible but yields wholly or in part to the intention of the parties, and the good sense and equity of the case. Cunningham v. Morrell, 10 Johns. 203, and cases cited in note to Wilks v. Smith, 10 Mees. & W. 360, by Hare & Wallace. A more practical test for all cases is, whether the defendant reasonably appears to have looked to the plaintiff's covenant, or to its performance as the consideration and condition of his being bound. Id. Here, however, no time is fixed for building this railroad to Dyersburg. The law implies that a reasonable time was intended to be given. Chit. Cont. 1062; Davis v. Gray, 16 Wall. [83 U. S.] 204, 231; Cock v. Taylor, 2 Tenn. [Overt.] 49. The act of January 27, 1870 (chapter 49, § 5), allowed seven years from the date of the act for the completion of the road. The bonds being issued subsequent to that amendment the parties are supposed to have contracted with reference to it, and this fixes the time within which this condition should have been performed, and it had expired when this suit was brought, and about six years before this money was payable; so that the rule operates the other way, unless the fact, that some of the coupons fell due prior to that time, changes it. The town may have been willing to pay the coupons falling due prior to the date designated by statute as the time for the completion of the road; relying upon the security which the condition gave as to the remainder. They could make this contract if they chose, and we have seen that the rule yields to the actual intention.

There are some cases which hold that, if part of the money be payable before the act is to be done by the other side, the respective promises are independent as to the installments of interest; but these cases have, in their peculiar facts, furnished other evidences of such intention, such as delivery of possession of the thing sold. Generally, however, the cases have been those where the principal money was payable in installments. Wilks v. Smith, 10 Mees. & W. 355; Mattock v. Kinglake, 10 Adol. & E. 50; Dicker v. Jackson, 60 E. C. L. 103; Edgar v. Boies, 11 Serg. & R. 445; Chit. Cont. 1082, and cases. It was held in Loan Ass'n v. Topeka, 20 Wall. 656, that the mere payment of interest would not work an estoppel, and I think the application of this rule of part pay-

ments to installments of interest, aside from other controlling circumstances is a perversion of the rule itself, and often would operate to defeat the intention. It should only be applied where the mode of payment of the principal money indicates that the parties could have had no other intention than that the promises should be independent. Gardiner v. Corson, 15 Mass. 500, shows that annual payments of interest do not bring the case within the rule of payment by installments. The plaintiff here also relies on the rule that where an essential part of the consideration has been paid, the party receiving it will not be allowed to defeat a recovery against him because some remaining portion of the whole consideration remains unperformed, the argument being, that the town has received the stock of the railroad company for which it subscribed, and because the whole consideration has not been received it cannot refuse payment. Chit. Cont. 1092. This question might become important if the railroad company were in a condition to tender performance of its undertaking, but the pleas aver that it has been foreclosed and its property and franchises sold under a mortgage. If a party has disabled itself from fulfilling the contract, there is already a breach, and the contract is at an end. Chit. Cont. 1079-1084. And the non-performance of one part of a contract is not excused by showing performance of another part. Id. 1079. Cutter v. Powell, 2 Smith, Lead. Cas. 1, and notes, is a case that discusses this doctrine; and it will be found that the rule does not apply where the main and essential part of the consideration remains unperformed. Here, the chief consideration was the railroad facilities to be acquired by the construction of the road to the town. It is well known, that in these days, stock in railroad companies, as property, is not of much value, and the shares are not, in this class of cases, any very essential part of the consideration.

The case of Humboldt Tp. v. Long, 92 U. S. 642, is not like this case. The bond did not show any condition, and therefore the subsequent use of the words "upon the performance of this condition" had no force. If the bond had said "payable upon express conditions that the road be constructed through the township," it would have been this case, but it does not so say. In Pendleton Co. v. Amy, 13 Wall. [80 U. S.] 305, the condition was precedent to the issuance of the bonds, and its performance was presumed from the recitals in the bonds and the fact of their issuance. But here the condition is attached to the payment of the money.

Usually, these bonds are issued in aid of the road without incumbrance as to conditions, and it would have been better for the railroad company had these bonds been so issued. But the parties could attach this condition to their contract, and the bonds were not valueless if the condition has been performed. It was simply a transfer of con-

fidence in the railroad company from the town to the capitalist, who takes the bonds. It is he who trusts the railroad company in this case, and not the defendant corporation. It was a wise contract on the part of the town, and it has taken the precaution to inform persons dealing in the bonds of the fact that it had attached the condition to the contract by this recital. The language of the proposition as voted, and the proceedings of the town authorities do not indicate any other condition than that shown on the face of the bond. But if they did, the expression in the bond itself is not ambiguous. The case of Miller v. Pittsburg & C. R. Co., 40 Pa. St. 237, falls directly within the case of a contract for payment before the road was to be built, and to build it. The principal money—the subscription itself—was all due two years before the road suspended. Here it is deferred for ten years, and the charter of the company required the road to be completed six years before these bonds were due. The case of Brooklyn v. Aetna Life Ins. Co. [99 U. S. 362], decided by the United States supreme court, October term, 1878, is a clear recognition of this defense as a good one. And there can be no doubt that if the bonds in that case had on their face given notice, as in this case, the plaintiff would have failed. The case of Town of Concord v. Portsmouth Sav. Bank, 92 U. S. 625, is directly in point in favor of this opinion. There the act of the legislature attached the condition to the subscription; here the contract of the parties attached it. There the bonds were void; here the condition, being broken, the bonds became valueless. The case of Nashville & N. W. R. Co. v. Jones, 2 Cold. 574, is also an authority directly in favor of this conclusion.

The importance of this case demands, and has received my most careful consideration, and the defenses set up have raised some of the most perplexing questions known to the law. This must be my apology for the delay in deciding it, and the fullness of the opinion. Demurrer overruled.