# JOHN H. MILLARD
## v.
## THE ST. FRANCIS XÁVIER FEMALE ACADEMY.

1. CORPORATION—SERVICE.—Where a private corporation executed its note with power of attorney to confess judgment, waiving service of process, etc., and judgment was confessed thereon, it cannot object that it was not served with process in the particular manner provided in its charter, as by its warrant of attorney it has waived such service.

2. SUBSEQUENT GENERAL LAWS AS TO SERVICE.—Although it may be that the subsequent general laws relating to service of process on corporations have operated to repeal the special provisions in the charter of the corporation, yet, even if this were so, it would give the court authority to vacate the judgment only, and would be no ground for dismissing the suit.

3. EXECUTION OF NOTE BY CORPORATION.—Where the name of the corporation appears in the body of the note, and it is signed in the corporate name by its president and secretary, it is a good execution of the note by the corporation.

4. VACATING JUDGMENT—DISMISSING SUIT.—The affidavits in support of the motion tended strongly to show that the judgment was largely in excess of the amount due, and this would be a good ground for vacating the judgment and letting the defendant in to plead, but would give no authority for dismissing plaintiff's suit.

5. POWER TO EXECUTE NOTES.—The power to execute promissory notes was not specifically confirmed by the charter of the defendant corporation, but it had the power to contract debts, and the power to give notes not being specially prohibited, it had power to give evidences of an indebtedness it had created.

6. ULTRA VIRES.—Even if the corporation had no power to borrow money, the defense of *ultra vires* ought not to prevail; the defendant ought not to retain the money borrowed, and escape re-payment on the plea that it had no power to borrow.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.   Opinion filed February 8, 1881.

This case was as follows: on the 10th day of October, 1876, "The St. Francis Xavier Female Academy, of Chicago, Illinois," an educational institution incorporated under a special act of the General Assembly, borrowed of the German National bank of Chicago the sum of $31,000, and for the sum of 10,000

of said 'loan, executed its promissory note, payable to its own order three years after date, with interest at the rate of nine per cent. per annum, payable semi-annually, and after indorsing the same in blank, delivered it to said bank. To secure said note, said corporation at the same time executed a deed of trust upon certain lands which it then owned; and accompanying said note was also a warrant of attorney executed by the corporation, authorizing the entry of its appearance by any attorney in any court of record, in term time or vacation, at any time after the maturity of said note, without process, and the confession of a judgment in favor of the legal holder thereof, for the amount appearing to be due thereon, with costs, attorney's fees, etc.

These papers, immediately after their execution, were transferred by the bank to Belinda Hughson, a resident of New York, who held them until after the maturity of the note. The principal and interest being then unpaid, the deed of trust was, at her instance, foreclosed, and said lands sold by the trustee, realizing a sufficient sum to pay the note, less a small balance, the precise amount of which is in dispute. The note was afterwards transferred by the holder to Millard, the plaintiff, who, on the 14th day of June, 1880, claiming a balance due thereon of $574.67, caused a judgment to be entered on said note in the Superior Court of Cook county by confession, under and by virtue of said warrant of attorney, for said sum and $100 attorney's fees, making in all $674.67 and costs.

Afterwards, and at the same term of court, the defendant entered its motion, based on divers affidavits, to vacate said judgment, specifying therein the following grounds:

1. That the defendant had no power to execute the note sued on.

2. That the defendant was not served with process, as required by law.

3. That said judgment was greatly in excess of the amount due.

4. That for a good consideration, the unpaid balance of the note was forgiven by the holder thereof.

5. That the note was not executed by the defendant corporation.

The affidavits filed with the motion state various facts which tend to show that the judgment was for a sum considerably larger than the balance actually due on the note. It is also made to appear by said affidavits, that after the payment of the proceeds of the sale to said Belinda Hughson, and while the note was still in her hands, she agreed, in consideration of the fact that the defendant was a religious and charitable association, to desist from making any further claim for said deficiency, and that the plaintiff, when he took the note, had full notice of such agreement.

On the hearing of the motion, the defendant read in evidence, in addition to said affidavits, the act of the General Assembly, approved February 27, 1847, by which the defendant was incorporated. Those portions of said act which are material in this case are as follows:

The first section, after declaring the persons therein named a corporation under the name and style of "The St. Francis Xavier Female Academy, of Chicago, Illinois," provides that said corporation, by that name and style, shall have perpetual succession, with power to sue and be sued, plead and be impleaded, to acquire, hold and convey property, real, personal or mixed, in all lawful ways; to have and use a common seal, and to alter the same at pleasure; to make and alter, from time to time, such by-laws as they may deem necessary for the government of said institution, its officers and servants: *Provided,* such by-laws are not inconsistent with the constitution and laws of this State and of the United States, and to confer on such persons as may be considered worthy, such academical or honorary degrees as are usually conferred by similar institutions.

"Sec. 3. Said institution shall remain located in or near the city of Chicago, Cook county; and the corporators and their successors shall be competent, in law and equity, to take to themselves, in their corporate name, real, personal, or mixed estate, by gift, grant, bargain and sale, conveyance, will, devise or bequest, of any person or persons whomsoever; and the same estate, whether real or personal, to grant, bargain, sell, convey, demise, let, place out at interest, or otherwise dispose

of the same for the use of said institution, in such manner as to them shall seem most beneficial to said institution. Said corporation shall faithfully apply all the funds collected, or the proceeds of the property belonging to said institution, according to their best judgment, in erecting suitable buildings, supporting necessary officers, instructors and servants, and procuring books, maps, charts, globes, and philosophical, chemical and other apparatus necessary for the success of said institution: *Provided*, nevertheless, that in case any donation, devise or bequest shall be made for particular purposes, accordant with the design of the institution, and the corporation shall accept the same, every such donation, devise or bequest shall be applied in conformity with the express conditions of the donor or devisor: *Provided*, further, that said corporation shall not be allowed to hold more than one thousand acres of land at any time, unless the said corporation shall have received the same by gift, grant or devise; and in such case they shall be required to sell or dispose of the same within ten years from the time they shall acquire such title; and on failure to do so, said land, over and above the beforenamed one thousand acres, shall revert to the original donor, grantor, devisor, or their heirs.

"Sec. 4. The treasurer of the institution and all other agents when required, before entering upon the duties of their appointment, shall give bonds for the security of the corporation in such penal sums and with such security as the corporation shall approve ; and all process against the corporation shall be by summons, and the service of the same shall be by leaving an attested copy thereof with the treasurer, at least sixty days before the return day thereof.

"Sec. 5. The corporation shall have power to employ or appoint a president or principal for said institution, and all such professors or teachers, and all such servants as may be necessary ; and shall have power to displace any or each of them, as the interest of the institution requires ; to fill vacancies which may happen by death, resignation or otherwise, among said officers and servants ; and to prescribe and direct the course of studies to be pursued in said institution."

On the hearing of the motion, the court below entered an order vacating the judgment and dismissing the suit, to which order the plaintiff duly excepted, and now brings the record to this court by appeal.

Mr. R. W. Bridge, for appellant; that when a contract is not, on its face, necessarily beyond the scope of the power of the corporation, it will, in the absence of proof be presumed to be valid, cited Bank of U. S. v. Dandridge, 12 Wheat. 29.

The corporation having power by its charter to contract debts, had power to give evidences of such indebtedness: Parsons on Notes and Bills, 163; Ill. Con. Female Coll. v. Cooper, 25 Ill. 148; Aurora Agr'l Soc. v. Paddock, 80 Ill. 263; Angell & Ames on Corporations, § 187; Kelly v. Mayor, etc., 4 Hill, 263; Caltun v. First Univ. Soc. 46 Ia. 106; Jackson v. Brown, 5 Wend. 590; Gordon v. Preston, 1 Watts, 385; Leggett v. N. J. Mfg. Co. 1 Sexton, 541.

The corporation had power to make all contracts necessary to carry on its business: Barry v. Mer. Exchange, 1 Sandf. Ch. 280; Galena v. Corwith, 48 Ill. 423; Clarke v. School Dist. 3 R. I. 199; Moss v. Harpeth Academy, 7 Heisk. 283; Thompson v. Lambert, 44 Ia. 239; Davis v. Proprietors, etc. 8 Met. 321; Abbey v. Billups, 35 Miss. 618; Manning v. Muscow Pres. Soc. 27 Barb. 53; Brown v. Winnisimet Co. 11 Allen, 326; Curtis v. Leavitt, 15 N. Y. 9; Clark v. Titcomb, 42 Barb. 122; Watts' Appeal, 78 Pa. St. 370.

Appellee, under the circumstances, is estopped from denying its liability on the note sued on: Field on Private Corporations, § 270; West v. Madison Co. Agrl. Board, 82 Ill. 205 ; Aurora Agrl. Soc. v. Paddock, 80 Ill. 263 ; Bradley v. Ballard, 55 Ill. 413; Darst v. Gale, 83 Ill. 136; Epis. Charitable Soc. v. Epis. Church, 1 Pick. 371 ; Supervisors v. Schenck, 5 Wall. 772 ; City of Lexington v. Butler, 14 Wall, 282 ; Thompson v. Lambert, 44 Iowa, 239.

As to the plea of *ultra vires:* Underwood v. Newport, Lyceum 5 B. Mon. 130 ; Moss v. Rossie Lead Co. 5 Hill 137; DeGriff v. Am. Linen Thread Co. 21 N. Y. 124.

Mr. Joseph F. Bonfield, for appellee; that corporations

have only such powers as are conferred by their charters, cited Thomas v. West Jersey R. R. Co. 11 Otto, 71.

Appellee had no power to execute the note in question: Ashbury R'y Co. v. Riche, 7 H. L. Cas. 653; Milburn v. Larne, 23 How, 435; v. Leonard Canton, 35 Miss. 189.

Appellee is an eleemosynary corporation, and holds its funds in trust for certain purposes: Green's Brice's Ultra Vires, 50; State v. Adams, 44 Mo. 576; Dartmouth Col. v. Woodward, 4 Wheat. 518.

Appellee should have been served with process; confession of judgment as in this case was *ultra vires:* McMurry v. St. Louis Oil Co. 33 Mo. 377.

Bailey, J. The principal controversy in this case, arises upon the first ground specified in the motion to vacate the judgment, viz: that the defendant had no power to execute the note sued on. The other grounds may be disposed of in a few words.

The second, viz: that the defendant was not served with process as required by law, is an attempt to apply to this case the provisions of the fourth section of the defendant's charter prescribing special rules for the service of process on the corporation.

Whether those provisions are to be regarded as still in force or not, we fail to perceive how any question as to the service of process can arise in this case, since the defendant, by its warrant of attorney waived such service. The right of the corporation to be served in a particular manner in no way interfered with its power to appear without process. But it may well be questioned whether the various amendments to the general law prescribing the manner of serving process on corporations, passed since the date of the defendant's charter, have not operated as a repeal, by implication, of the provisions of the charter on that subject. But even if there was no proper service, such fact could result only in a vacation of the judgment, and would be no ground for dismissing the suit out of court against the plaintiff's objection.

The fifth ground, viz, that the note was not executed by the

defendant corporation, does not seem to be true in fact. It purports, on its face, to be the note of the corporation, and it was executed by officers who, as between the corporation and third persons, will be presumed to have been vested with sufficient authority to bind their principal, provided the execution of the note was not, as to the corporation itself, *ultra vires*. In the body of the note, the corporation appears in its corporate name as the promisor, and the signature is in the following words: "The St. Francis Xavier Female Academy, of Chicago, Illinois: by Sophia Granger, President; Anna Drum, Secretary." This was an execution by the corporation, it not being pretended that the persons who signed as president and secretary were not such officers, or that their signatures were not genuine.

The affidavits read in evidence on the hearing of the motion, tended strongly to support the third and fourth grounds for vacating the judgment, viz.: that the judgment was largely in excess of the amount due, and that the holder of the note, after the sale under the deed of trust, agreed to forgive, or in other words, to donate to the defendant whatever balance remained unsatisfied. It may be doubted whether the latter of these grounds presented any defense to the note, it appearing that the transaction was at most a mere unexecuted gift, and therefore incapable of enforcement. But the showing made by the affidavits, that the judgment was largely in excess of the amount due, furnished a sufficient ground for vacating the judgment, and letting the defendant in to make its defense. It furnished no ground, however, for dismissing the suit. That should have been allowed to remain pending for the purpose of enabling the parties to litigate the matters thus in controversy.

But if it be true that the defendant had no power to execute the note, it follows, necessarily, that the plaintiff could in no event be entitled to judgment, and that the suit was properly dismissed out of court. The decision of the court below, then, can be sustained only upon the theory that the execution of the note by the corporation was *ultra vires*.

A corporation is said to be a mere creature of the law, and to possess only such powers and capacities as are given it by

its charter. It is precisely what the incorporating act has made it, and can exercise only such powers as are specifically granted, or are necessary to its existence or incidental to the exercise of the powers expressly given. Hence, any specific power which may be claimed for a corporation must find its warrant in the charter, and if it cannot do that it has no existence.

It is clear that the power to execute a promissory note is not among the powers specifically conferred upon the defendant by its charter, and we have only to determine whether it is implied as incedental to the exercise of the powers expressly given. Had it the power to contract debts, and if so, is the power to evidence such debts by the execution of a promissory note to be implied?

The defendant was by its charter expressly empowered to establish and maintain an educational institution, and to acquire and hold property for that purpose. By the third section of the charter, the corporators and their successors were declared to be competent, in law and equity, "to take to themselves, in their said corporate name, real, personal or mixed estate, by gift, grant, bargain and sale, conveyance, will, devise or bequest of any person or persons whomsoever; and the same estate, whether real or personal, to grant, bargain, sell, convey, demise, let, place out at interest or otherwise dispose of the same for the use of said institution, in such manner as to them shall seem most beneficial to said institution." The power to acquire property, conferred by the first section, is, if anything, broader still. Authority is there given to the corporation, in its corporate name, "to acquire, hold and convey property, real personal or mixed, in all lawful ways." Among the lawful ways in which property may be acquired, is, by purchase, either for cash or on credit. It cannot be doubted, then, that power is here given to acquire all such real and personal property as might be necessary for the establishment and maintenance of the institution, by purchase, and on credit. Is the power to give a promissory note for the indebtedness thereby incurred to be implied?

The charter does not prohibit the execution of negotiable

paper, and where there is no such prohibition, a corporation may execute such paper for a debt contracted in the course of its proper business. In the case of Curtis v. Leavitt, 15 N. Y. 66, it is said: " That the right of corporation in general to give a note, bond or other engagement to pay a debt, is so nearly identical or so inseparably connected with the right to contract the debt, that no doubt upon the question ought to be admitted. When a corporation can lawfully purchase property or procure money on loan in the course of its business, the seller or the lender may exact, and the purchaser or borrower must have the power to give, any known assurance which does not fall within the prohibition, express or implied, of some statute. The particular restriction must be sought for in the charter of the corporation, or in some other statute binding upon it; but if not found in that examination, we may safely affirm that it has no existence." So in Moss v. Averill, 10 N. Y. 457, the court say: " No question is better settled upon authority than that a corporation, not prohibited by law from doing so, and without any express power in its its charter for that purpose, may make a negotiable promissory note payable either at a future day, or upon demand, when such note is given for any of the legitimate purposes for which the company was incorporated." The authorities holding this doctrine are very numerous, but reference may be made to the following: Barker v. Mechanic Ins. Co. 3 Wend. 94; Moss v. Oakley, 2 Hill, 265; Kelly v. Mayor of Brooklyn, 4 Id. 263; Barry v. Merchants' Exchange Co. 1 Sandf. Ch. 280; Mott v. Hicks, 1 Cow. 513; Hamilton v. New Castle and Danville R. R. Co. 9 Ind. 359; Carne v. Brigham, 39 Me. 35; Patridge v. Badger, 25 Barb, 146; Commercial Bank v. Newport Manufacturing Co. 1 B. Mon. 13; Smith v. Eureka Flour Mills, 6 Cal. 1.

The affidavit of the defendant's president shows, it is true, that the note in question was given, not for the purchase money of property, but to secure a loan of money to pay a previously existing indebtedness. But we think that from the power to contract a debt, the power to borrow money for its payment is clearly implied. Thus in Barry v. Merchants' Exchange Co., *supra*, it is said: " Upon this principle, and to the extent

stated, a corporation, in order to attain its legitimate objects, may deal precisely as an individual may who seeks to accomplish the some ends. If chartered for the purpose of building a bridge, it may contract a debt for the labor, the materials, or the land upon which the bridge is abutted. If more advantageous, it may borrow money to purchase such land or materials, or to pay for such labor. And as evidence of the indebtedness and as security for its repayment, it may execute to the creditor a promissory note, a bond or a mortgage, whether the debt be for the money borrowed, or for the work, materials or land."

In Moss v. Haspeth Academy, 7 Heisk. 283, it is held that a corporation, unless prohibited has authority to borrow money to accomplish the purpose for which it was organized, wherever such power may be fairly implied as a usual and appropriate means to accomplish the objects of its charter. See, also, Beers v. Phœnix Glass Co. 14 Barb. 358; Partridge v. Badger, 25 Id. 46.

But even if the borrowing of the money in question was in excess of the corporate powers of the defendant, we think the defense of *ultra vires* should not prevail. The defendant ought not to retain the money borrowed, and escape its repayment on the plea that it had no power to borrow it. See Degroff v. American Linen Thread Company, 24 Barb. 275; Bissell v. M. S. & N. I. R. R. Co. 22 N. Y. 258.

We think the court below erred in dismissing the suit, and the judgment will be reversed and the cause remanded, with instructions to reinstate the suit, so that the parties may have an opportunity of litigating therein the matters in controversy between them in relation to said note and the indebtedness thereby secured.

Judgment reversed.