## COMMISSIONERS OF MARION COUNTY *v.* CLARK.

1. A court is not required to submit evidence to the jury, unless it be of such a character as would warrant a verdict for the party producing it, and upon whom the burden of proof is imposed.
2. Where the title of the original holder of negotiable instruments, which are infected with fraud, invalidity, or illegality, is destroyed, that of every subsequent holder which rests on that foundation, and no other, falls with it.
3. Where the first indorsee, without notice of any prior equities between the original parties, purchases, for value, a negotiable instrument, the second indorsee, who acquires it before it is due, and for value, takes a good title, although he had notice of such equities.
4. Bonds issued, pursuant to legislative authority, by a municipal corporation in aid of a railroad company are negotiable instruments.
5. *Town of Coloma* v. *Eaves* (92 U. S. 486) cited and approved.

ERROR to the Circuit Court of the United States for the District of Kansas.

*Mr. A. L. Williams* for the plaintiffs in error.

*Mr. Alfred Ennis, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Power is vested by law in the constituted authorities of counties and other municipal corporations to subscribe for and take stock in any railway company duly organized under the law of the State or Territory, or to loan the credit of the municipality to such a railroad company, subject to the condition that the majority of the qualified voters of the same, voting at the election, shall, at a regular or a special election to be held therein, first assent to the proposal for such subscription; and the provision is that it shall be the duty of the municipal authorities, when the terms of the proposal are so approved, to make subscription to the stock of the railway company.  Laws Kansas 1869, 108.

Sufficient appears to show that the railway company became duly incorporated for the purpose of constructing a railway from the northern to the southern line of the State through Davis, Marion, and other counties named in the certificate of incorporation.  Tax-payers and citizens of the County of Marion petitioned the county commissioners of the county to submit a proposition to the qualified voters of the county to subscribe for two thousand shares of $100 each of the capital stock of the railway company, to be paid for in thirty-years seven-per-cent bonds of the county.  Pursuant to the prayer of those petitioners, the county commissioners submitted that question to the qualified voters of the county, at a special election held at the time and place appointed in the order of the county commissioners; and it appears by the record that the election was duly held at the time and place appointed, and that a majority of the votes cast at the election were in favor of the subscription by the county for two thousand shares of the capital stock of the railway company.

By the terms and conditions of the proposition submitted and adopted, the stock to be subscribed was to be paid for in the bonds of the county, payable thirty years after their date,

with annual interest at the rate of seven per cent per annum; and the proposal was that the bonds should be delivered to the railway company as follows: 1. That, on the completion of the grading of the railway from the northern line of the county to Marion Centre, one-half of the bonds should be due and deliverable under the contract. 2. That, upon the completion of the railway from Marion Centre to the village of Peabody, other bonds to the amount of $75,000 should be due and deliverable as a second instalment. 3. That, upon the completion of the railway to the south line of the county, the residue of the stipulated amount of the bonds should be due and deliverable.

Due canvass of the qualified votes cast at the election was made by the county commissioners, and they made the proper entry in their records that the subscription of the stock was then and there made by their board for and in behalf of the county; and it appears that the board did then and there elect one of their number to make the subscription, and that the member so elected entered the same in the books of the railway company.

Beyond all doubt, the subscription was legally made; and it is not controverted that the railway company graded their line of railway from the north line of the county to Marion Centre, and that the authorities of the county executed and delivered to the railway company the bonds of the county to the amount of $100,000, in pursuance of the terms of the subscription, with coupons attached for the payment of interest at the rate of seven per cent semi-annually.

Purchases of the bonds with coupons annexed to a large amount were made by the plaintiff from the First National Bank of Junction City, where they were deposited for sale. Payment of the interest coupons being refused, the plaintiff, as the owner and holder of the same, instituted a suit in the Circuit Court to recover the amount. Two other suits were subsequently instituted by him for a similar purpose; and the three suits in the course of their prosecution were consolidated, the claim of the plaintiff being for the amount of one hundred and ninety-four coupons, each for the sum of thirty-five dollars. Service was made, and the defendants appeared and set up the several defences exhibited in the answer. Special reference to

the separate defences as set up in the answers may be omitted, as the questions to be re-examined sufficiently appear in the bill of exceptions.

Questions of fact were submitted to the jury; and the transcript shows that the verdict and judgment were for the plaintiff, in the sum of $6,703.54, and that the defendants excepted to the rulings and instructions of the court.

Two thousand shares of the stock were subscribed; but the bonds were issued in shares of $1,000, with interest coupons attached. On the trial of the cause, the plaintiff, to maintain the issue on his part, offered one of the bonds in evidence, with an overdue coupon attached; and the defendants objected to its admissibility, upon three grounds: 1. Because it was signed only by the chairman of the county commissioners. 2. Because it was made due and payable thirty years and twenty-seven days after date. 3. Because the interest coupons attached provide for the payment of interest semi-annually instead of annually. But the court overruled the objections, and the bond with the coupon attached was admitted, subject to the objections of the defendants. Coupons of a similar character, to the number of one hundred and ninety-four in all, were also introduced in evidence by the plaintiff, subject to the same objections.

Exceptions were duly taken by the defendants to the rulings of the court in admitting the bond and coupons, and the plaintiff rested his case in the opening. Evidence was then introduced by the defendants, consisting, in the first place, of the deposition of the plaintiff and a certified copy of the record of a suit previously instituted in the County Court to cancel the bonds issued by the county and to restrain the First National Bank from transferring the same to the railway company.

They also introduced a copy of the proposition submitted to the qualified voters of the county to subscribe for the capital stock of the railway company, in payment for which the bonds in question were executed and delivered, to which reference has already been made; but it also provides, that, before any county bonds should be issued and delivered, the railway company shall execute to the county a good and sufficient bond that the company will complete the railway as therein represented and proposed.

Before the bonds were issued and delivered by the county the railway company did execute a bond to the county in the sum of $200,000, conditioned that the company should fully complete and stock the railway, and put the same in running order, as required in the recorded conditions of the subscription.

Both parties agree that bonds to the amount of $100,000, and no more, were issued by the county and delivered to the company; but the defendants insist that the authorities of the county were induced to issue and deliver the same by the misrepresentation and fraud of the railway company.

Two suggestions in that regard are exhibited in the answer and in the assignment of errors: 1. That the railway company, when they applied for the bonds, concealed from the authorities of the county the fact that the company had been reincorporated with an amended charter.  2. That the company, when they applied for the bonds, falsely and fraudulently represented that the sureties were good for the amount of the bond, and the defendants introduced evidence tending to show that the sureties were insolvent.

They also gave evidence tending to show that the charter of the company was amended, and the nature and extent of the amendment made, before the company applied for the bonds, and that they gave no notice to the authorities of the county of the meeting of the directors of the company when those amendments were adopted.

Three other defences set up in the answer should be briefly noticed: 1. That the bonds were illegal, because issued for a longer time than thirty years.  2. That they were illegal, because the interest is payable semi-annually instead of annually, as stipulated in the proposition submitted to the qualified voters.  3. That the plaintiff is not a *bona fide* holder of the bonds, because he did not pay value for the same before they became due, without knowledge of the facts set up in these defences: all of which is expressly denied by the plaintiff in his reply to the answer.

Instructions were given by the court to the jury in substance and effect as follows: 1. That the plaintiff, when he introduced the coupons in evidence, made out a *prima facie* case.  2. That there is no evidence to go to the jury to show that the First

National Bank had notice, at or prior to the purchase of the bonds, of the fraudulent character of the representations made by the railway company which induced the authorities of the county to accept the bond given by the company to complete the railway, as stipulated in the proposition submitted to the qualified voters of the county. 3. That if the bank gave value for the bonds and purchased them before due, without notice of the fraud set up and relied on by the county in respect to the bond given in evidence, and sold the bonds in suit to the plaintiff, he is entitled to recover on the bonds, though he had notice when he obtained them that the county claimed they were fraudulent, and that a suit was pending contesting their validity, the record of which had been introduced in evidence. 4. That the amendment of the charter of the railway company is no defence, if the bonds in suit were purchased by the bank before due and for value.

Seasonable exceptions were taken by the defendants to the several instructions given to the jury and to the rulings of the court in admitting and excluding evidence in opposition to the objections made by the defendants, and they sued out a writ of error, and removed the cause into this court.

Provided the bond was properly admitted in evidence, it is too plain for argument that the first instruction is entirely correct, and the better opinion is, that the exception to it was only taken to exclude the conclusion that the objections previously made to the admissibility of the bond were not waived.

I. All of the bonds recite on their face that the county has caused the same " to be signed in their behalf by the chairman of the board of county commissioners, attested by the county clerk, and the seal of said county affixed." They bear date the 3d of September, 1872, but they were not issued and delivered until the 4th of November following. Instruments of the kind must be tested in that regard by the law of the jurisdiction where they are executed; and by the law of the State in force at that time it is provided that " such bonds, if issued by a county, shall be signed by the chairman of the board of county commissioners, and be attested by the county clerk," which is all that need be said in response to the first objection. Laws

Kansas 1872, sect. 2, p. 111; *Thayer* v. *Montgomery County*, 3 Dillon, 389; *Marcy* v. *Oswego*, 92 U. S. 637.

Enough has already been remarked to show that the second objection to the admissibility of the bond is without merit, as there is no excess in time beyond thirty years if the computation be made as it should be, from the time the bonds were actually executed, issued, and delivered.    Laws Kansas 1872, sect. 2, p. 111.

Where a municipal corporation has power to borrow money, they may make the principal and interest payable when they please, which is a sufficient answer to the third objection. *Meyer* v. *Muscatine*, 1 Wall. 391.

Viewed in the light of these suggestions, it is clear that the bond was properly admitted in evidence, and that the exception to the first instruction given to the jury must be overruled.

II. Matters of fact are involved in the exception to the second instruction.    Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. *Ryder* v. *Wombwell*, Law Rep. 4 Exch. 39.

Decided cases may be found where it is held that, if there is a *scintilla* of evidence in support of a case, the judge is bound to leave it to the jury: but the modern decisions have established a more reasonable rule; to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.    Law Rep. 2 Priv. Council Apps. 335; *Improvement Co.* v. *Munson*, 14 Wall. 448; *Pleasants* v. *Fant*, 22 id. 120; *Parks* v. *Ross*, 11 How. 373; *Merchants' Bank* v. *State Bank*, 10 Wall. 637; *Hickman* v. *Jones*, 9 id. 201.

Apply that rule to the question before the court, and it is clear that the ruling of the Circuit Court was correct, as there is no evidence reported in the transcript which would have warranted the jury in finding the issue for the defendants.

*Jewell* v. *Parr*, 13 C. B. 916; *Toomey* v. *Railway*, 3 C. B. N. S. 150; *Wheelton* v. *Hardisty*, 8 El. & Bl. 276; *Schuchardt* v. *Allen*, 1 Wall. 369; *Grand Chute* v. *Winegar*, 15 id. 369.

III. Due exception was also taken to the third instruction, which presents a question of commercial law. Standard authorities show that, where a negotiable instrument is originally infected with fraud, invalidity, or illegality, the rule is, that the title of the original holder being destroyed, the title of every subsequent holder which reposes on that foundation and no other falls with it. Byles on Bills, p. 118.

Where the theory that the plaintiff paid value for the instrument depends solely upon the *prima facie* presumption arising from the possession of the instrument, the defendant may, if the pleadings admit of such a defence, prove that the instrument originated in illegality or fraud; and the rule is, if he establishes such a defence, that a presumption arises that the subsequent holder gave no value for it, and it is also true that such a presumption will support a plea that the holder is a holder without consideration, unless the presumption is rebutted by proof that the plaintiff paid value for the instrument, in which event the plaintiff is still entitled to recover. *Fitch* v. *Jones*, 5 El. & Bl. 238; *Smith* v. *Bracne*, 16 Q. B. 244; *Hall* v. *Featherstone*, 3 H. & N. 287; 2 Pars. on Bills and Notes, 438.

But the rule is different when the question is whether the indorsee and holder had notice of the prior equities between the antecedent parties to the instrument. Holders of such instruments, under such circumstances, are not obliged to show that they paid value for the instrument until the other party has clearly proved that the consideration was illegal, or that it was fraudulent in its inception, or that it has been lost or stolen before it came to the possession of the holder. *Wheeler* v. *Guild*, 20 Pick. 551; *Collins* v. *Martin*, 1 Bos. & Pul. 648; *Miller* v. *Race*, 1 Burr. 452; *Peacock* v. *Rhodes*, 2 Doug. 632.

Possession, even without explanation, is *prima facie* evidence that the holder is the proper owner or lawful possessor of the instrument; and the settled rule is, that nothing short of fraud — not even gross negligence — is sufficient to overcome the pre-

sumption and invalidate the title of the holder, as inferred from his actual custody of the instrument. *Goodman* v. *Harvey*, 4 A. & E. 780; *Goodman* v. *Simonds*, 20 How. 367; *Uther* v. *Rich*, 10 A. & E. 784; *Arbouin* v. *Anderson*, 1 A. & E. n. s. 498.

None of these propositions can be controverted; and it follows that where the first indorsee purchases the instrument before due and pays value, without notice of any prior equities, the second indorsee holding under the first takes a good title, even though he had notice of such prior equities, if he pur chased the instrument in the regular course of business before it became. due, for the reason that he took a new and independent title under another indorser. *Bailey* v. *Bidwell*, 13 M. & W. 15.

Notice of such prior equities cannot affect the title of the second holder, if he acquired title from a prior holder who had no such knowledge. Byles on Bills (5th Am. ed.), 118; Story on Notes, sect. 196; Story on Bills, sect. 220.

Suffice it to say, without pursuing the inquiry, the court is unhesitatingly of the opinion that the exception to the third instruction must also be overruled.

IV. Proof was offered by the defendants to show that the charter of the railway company was amended subsequent to the subscription to the stock, so as to include branches four hundred and fifty miles in length, in addition to the original line, without the knowledge or consent of the county commissioners or of the directors of the railway company resident in the county: but the plaintiff objected to the evidence, and it was excluded by the court; to which ruling the defendants then and there excepted, which presents the same question as that which arises from the exception taken to the fourth instruction given to the jury, as follows: that the amendment of the charter is no defence to the action if the bonds were purchased by the bank before due and for value.

Counties, if duly organized under the law of the State, are certainly vested with the power to subscribe for stock in a railway company, and to issue the bonds of the county to pay for such subscription. Suppose that is so, still it is insisted by the defendants that the bonds delivered to the railway company

in this case impose no pecuniary obligation upon the county, in consequence of the defects and irregularities in the proceedings of the municipal authorities, and the frauds and misrepresentations of the officers and agents of the railway company.

In conducting the defence at the trial, the defendant proceeded upon the ground that the plaintiff had knowledge of the supposed defects, irregularities, frauds, and misrepresentations; but the finding of the jury under the instructions of the court negatives every such imputation, and shows that the plaintiff is a *bona fide* holder of the instruments, having purchased the same in the usual course of business before due and for value. That such is the legal effect of the verdict cannot be doubted; and it appears by the recital of the bonds that they were issued in payment for two thousand shares of the capital stock of the railway company subscribed by the county, in pursuance of an order of the county commissioners, made and entered in their minutes.

Bonds of the kind executed by a municipal corporation to aid in the construction of a railroad, if issued in pursuance of a power conferred by the legislature, are valid commercial instruments, and, if purchased for value in the usual course of business before they are due, give the holder a good title, free of prior equities between antecedent parties, to the same extent as in case of bills of exchange and promissory notes. Such a power is frequently conferred to be exercised in a special manner, or subject to certain regulations, conditions, or qualifications; but if it appears that the bonds issued show by their recitals that the power was exercised in the manner required by the legislature, and that the bonds were issued in conformity to the prescribed regulations and pursuant to the required conditions and qualifications, proof that any or all of the recitals are incorrect will not constitute a defence to the corporation in a suit on the bonds or coupons, if it appears that it was the sole province of the municipal officers who executed the bonds to decide whether or not there had been an antecedent compliance with the regulations, conditions, or qualifications which it is alleged were not fulfilled. *St. Joseph Township* v. *Rogers,* 16 Wall. 659; *Town of Coloma* v. *Eaves,* 92 U. S. 484.

Other cases, too numerous for citation, have been decided by this court to the same effect, but suffice it to say that we are all of the opinion that there is no error in the record.

*Judgment affirmed.*