Mr. Justice Merrick
delivered the opinion of the court.
In the case of Frank Hume and James K. Cleary, against whom a suit was brought by the Second National Bank of Washington, the plaintiff was the holder of a piece of supposed commercial paper in this form of words:
“$1,200. Washington, D. C., Sept. 27, 1881.
“Thirty days after date I promise to pay to the order of Frank Hume twelve hundred dollars, value received, with eight per cent, interest until paid, payable at Second National Bank.
“Thomas L. Hume.
Endorsed:
“Frank Hume.
“Hume, Cleary & Co.”
At the trial of the cause the plaintiff offered in evidence the promissory note and the protest and proved the signature by Thomas L. Hume, the drawer, who was himself a member of the firm of Hume, Cleary & Co., of the firm name as the last endorser, and then rested.
In that state of the case the defendant offered to prove that the note had originated in fraud; that the name of Frank Hume, the first endorser, was forged; and that the name of the firm, Hume, Cleary & Co., had been placed there by the drawer without authority, and that the firm knew nothing whatsoever of the existence of the transaction and had derived no benefit whatsoever from it.
The court upon that offer of proof rejected the testimony as inadmissible in that stage of the case. In this we think there was manifest error. The rule of law has been laid *101 down by a concurrence of all the great authorities in this country to this effect: that, while it is perfectly competent for the holder of commercial paper to rest, in the first instance, upon the proof of the signature of the party to be charged, as in the case of the last endorser (which carries proof of the others and of the notice of protest — and that proof raises a prima facie case of good consideration and bona fide ownership), yet when the defendant in such a case offers to prove that there was fraud or illegality in the transaction, such proof is admissible, and, when admitted, it changes the burden of proof and throws Upon the plaintiff the further obligation of accounting for the manner in which he obtained the paper, and of showing that it was bona fide and for value received.
This doctrine is very clearly laid down by the Supreme Court of the United States in the case of Commonwealth against Clark, 94 U. S., 285. But there is a later case, which was not referred to in the argument of the case at bar. It was decided in the State of Maryland, at October Term, 1881, and it so well expounds the rule of law and the reason of it — not that it is better authority, but being later and quoting and relying upon the decision in 94th U. S. which sets forth the rule of law clearly — that I may he pardoned (in giving the opinion of this court) for using the language of that eminent tribunal for the purpose of showing what the opinion of this court is in that respect. I read from the case of Cotton vs. Pusey in 51th Maryland, p. 452. The court says in its opinion:
“By the fifth prayer the court was asked 'to instruct the jury that if the note was transferred to the plaintiff before its maturity, then the onus was on the defendant to show by evidence that the plaintiff had notice of the want of consideration for the note, and the fraud in its procurement from the defendant, and that, in the absence of such evidence of notice to the plaintiff, he was to be presumed to be the holder of the note for value without notice. This clearly is not in accordance with the law. It is true that the endorsee or transferee in an action against the maker *102 of a negotiable note has nothing to do in the opening of his case but to prove the signatures to the instrument and introduce it in evidence, for the instrument goes to the jury with the legal presumption that the plaintiff became the holder of the same for value at its date or before maturity, in the usual course of business, without notice of anything to impeach his title. He is at liberty to rest upon this presumption, and is not bound, in the first instance, to show the circumstances under which he obtained the note or that he paid value for it, but for the defendant to show, by such proof as may be properly left to the jury to consider, that the instrument was procured by fraud, or was fraudulent in its inception, or that the consideration was illegal, or that it had been.lost or stolen before it came to the possession of the holder. The burden of proof is changed and it is then incumbent upon the plaintiff to show that he acquired the note bona fide for value, in the usual course of business, before maturity and under circumstances that create no presumption that he knew of the existence of the facts that impeach the validity of the instrument. This is a well established rule applicable to negotiable instruments, and it is said to be wise and salutary in the protection it affords. It proceeds upon the presumption that the person who has been guilty of the fraud or illegality in obtaining the instrument would dispose of it and would place it in the hands of another person to sue upon; and it is because of such presumption that the proof of fraud, illegality or loss casts upon the holder the burdén of showing that he is a bona fide holder for value or under what circumstances and for what value he became the holder of the note.”
There the rule is laid down emphatically, and clearly assigns the reasons upon which the well founded rule is based in morals, and refers to 94th U. S., among others, and all the late authorities sustaining fully the position of the court in that case.
That being the rule of law it is manifest'then that the court below erred in its first ruling in rejecting the offered proof on the part of the defendants to show that the note *103 originated in fraud and illegality and the forgery of the name of one of the parties.
In the further progress of the cause there was evidence offered on the part of the defendants, and admitted subject to exception, for the purpose of showing that the note had never been the note of the partnership or of the first endorser, and that no value had been received for it by either of the parties subsequent to the drawer, and further that the note was discounted by the drawer at the bank for his own benefit, and was treated throughout by the- bank and the drawer (although the drawer was one of the parties composing the firm), as his own property.
It was proper upon that form of proof to submit the whole case to the jury to determine, as a matter of fact, whether the holder of the paper, at the time he discounted it on behalf of the drawer, was dealing with the drawer in his individual capacity or was dealing with him as a member of the firm for the benefit of the firm. Occupying the double character of drawer of the note and also one of the members of the firm endorsing the note, it would have been competent for him, notwithstanding the unusual form of the note, to have treated it as a note offered for discount by him in his character as a member of • the firm for the benefit of the firm; and if he had professed to be dealing with the discounting bank in his character as a member ot the firm for the benefit of the firm, the form of the paper, when it stands thus in the peculiar dual relation of a partner so dealing, would not have been as in the case in the 95th U. S. — the cashier of the Shawnee bank dealing with the paper of the bank — satisfactory proof that it was only accommodation paper on the part of the bank who was put there as an endorser, and that the party was therefore charged legally with knowledge and notice of the infirmity of it and bound to see whether the accommodation endorsement was for the benefit of the party offering it and duly authorized, but, on account of his dual character, he would still have had the right to deal with it as partnership paper if he had so dealt with it.
*104 But tlio proof here goes on to show that he dealt with it as his individual paper; that the credit went to him; that he was charged as drawer, and his co-partner, Frank Hume, was charged as endorser, and the firm was charged as endorser; the whole course of dealing therefore indicating, or furnishing proof so to speak, that he was dealing with it as for his own benefit and using the firm as an accommodation endorser. All that proof was proof competent, therefore, to go to the jury notwithstanding he was a partner in the house, and notwithstanding he presented it and signed the name of the partnership. It was proof competent to go to the jury with appropriate instructions from the court, in order that they might determine, from all the facts and circumstances of the case, whether the discount was made for the benefit of the firm or for the benefit of the drawer. And if the jury should find (as a matter of fact it was for them exclusively to find) that the accommodation was for him in his individual capacity, and that the name of the firm was put there as an accommodation endorser, then, before the bank could recover, it would be necessary for it to establish the fact that he (the drawer) had authority so to put the name of the firm as accommodation endorser.
The court, therefore, under these views, erred in rejecting that mass of testimony, erred in its charge and erred in rejecting a large proportion of the prayers of the defendant based upon the theory of the law which I have indicated. Some of the prayers of the-defendant are erroneous for various reasons, but there were prayers enough to justify them to go to the jury upon the theory that I have indicated.
The fifth, sixth and seventh prayers of the defendant were erroneous in this; That they put it to the jury to find that the plaintiff knew or had reason to believe there were these infirmities. That, under the rule as laid down by the Supreme Court of the United States, is not enough. In the case of Goodman vs. Simons, the Supreme Court of thv. United States have said it must be knowledge and not reasonable belief. The facts I have adverted to were competent to go to the jury from which they would have the *105 right, according to the weight they would give to' the testimony on the one side or the other, to determine whether, in point of fact, he had knowledge of the infirmity of the paper, and they had the right to make the deduction, if they so pleased, that he had knowledge, and if they should draw the inference of knowledgé from this evidence, which was competent evidence to establish the fact of knowledge, then the plaintiff was not entitled to recover.
With this explanation of the prayers I need not criticize them any further than to say that upon a review of them the court finds, in view of this testimony which ought to have been admitted, that the court below should have granted the first, second, eighth and tenth prayers of the defendant. Those prayers covered the rule of law that I have just announced as being the true rule applicable to such a case, and would have given the defendants the benefit of standing before a jury to argue upon all the testimony as to whether or not the plaintiff, at the time he dealt with this negotiable paper,i knew that it was not negotiated for the benefit of the firm and that the firm was an accommodation endorser, and therefore the firm was not to be bound unless knowledge was brought home that the firm had authorized the endorsement for that purpose.
The judgment of the court below will therefore be reversed and the case will be remanded for a' new trial in order that on a second trial it may be conformed to the rules which we have laid down as the true rules which govern a case circumstanced as this one is. There were other exceptions in the case, but it is not necessary to advert to them.