Daniels, J.
In this action the plaintiff claimed to recover the value of his services as an architect in drawing plans and making estimates for and concerning the erection of an addition to a house, at the request of and for the defendant. At the close of the plaintiff’s evidence it was considered by the court that he had failed to establish the fact that he was employed to render the service by the defendant, and whether the evidence sufficiently tended to prove this fact to entitle the plaintiff to submit the question to the jury, is the point upon which the appeal depends. The addition which was to be, and was made, to the house, consisted of a room designed to be occupied by John A. Morris, the husband of the defendant, and it was he who first called upon the plaintiff to make the plans and estimates for the addition. At his instance they proceeded to the defendant’s residence, where an interview took place with the defendant, as well as her husband, and in that interview the contemplated addition was the subject of conversation. In that conversation he stated that he remarked to the defendant that Mr. Morris told him that she was about to erect an addition to her house, and that it was decided to have Mr. Doty do the work, and that she replied that was so, and there was some talk and discussion regarding the proportions of the room and the size of the building; that he made a sketch of what he supposed would be the addition, and that Mrs. Morris, the defendant stated various features which she wished to have made to the room. And that the result of the conversation was that the defendant stated that she thought what it was proposed to do would be satisfactory and approved of the plan he presented. Her husband, Mr. Morris, also took part in the conversation in which it was stated that the room was for him, but if he did not like it the defendant remarked that she would take it herself. This was the only interview which at any time took place between the plaintiff and the defendant concerning this work. And while it was not directly stated that she was the person for whom *22 it was to be done, or who was to incur the liability for it, yet that might be assumed, or inferred, from the evidence, if it were all that was given by the witness upon the trial. But it was not, for on the following morning Mr. Morris is stated by the plaintiff to have handed to him a paper containing suggestions, or indications generally describing and mentioning the work to be done. The witness drew plans for the work, but they were not exhibited to the defendant; but were to her husband, whom it was stated was to arrange the details, and these drawings were shown to him. After that the defendant and her husband proceeded to the south where they remained for a number of months, and- during that time correspondence passed between her husband and the plaintiff concerning this work. In the letters written by her husband he referred to the work as that which was to be done for himself, and mentioned the sum at which the. plaintiff had led him to expect it would be performed. In neither of these letters was any allusion made to the fact that the work was to be for the defendant, but in all instances it was mentioned and referred to as the work of the writer, who was her husband. At the plaintiff’s instance estimates were also obtained from other persons for portions of the work and material required to build and finish the room. Those estimates were produced in connection with the plaintiff’s testimony upon the trial. They were addressed to him and, with but one exception, they all stated the work to be for Mr. John A. or J. A. Morris, and that exception included two estimates of furniture by Roux & Co., which were stated to be for the defendant. The builder Doty, also himself obtained estimates for work and received letters concerning it. And in those instances the husband was mentioned as the person for whom the work was being done. And in a letter written under the direction of the plaintiff to him, in answer to complaints, or objections, made by him, the plaintiff himself mentioned this work as the work of the husband. In that letter concerning the cost of the work which was the subject of complaint it was stated, “at the outset I spoke to Mr. Doty, about making and sending you an estimate of the cost,” and, “If I had entertained any doubt on the subject it would have been dispelled by the fact that Doty recently informed me of your decision in favor of Spanish oak,” and “He also informed me that he had sent you samples from the piece I gave him, and that your preference was emphatic.” As to the cost it was written: “ ¡No, sir; I have not forgotten your remark about five thousand,” and in alluding generally to the work and expenses it was added: “Herewith I send drawings of the plans, and I think you will see that what is being done is *23 merely the development of your instruction. There a few things done to emphasize the feelings and comforts of the room that you might possibly call deviations from your strict instructions,” and further on it was added: “ It is my duty to do as you request, and Doty in arriving at the cost shall have all the assistance I can render him.” The several plans which were made each contained the endorsement of the words: ££ Plans for addition to the house of John A. Morris.”
This however, was stated by a witness in the plaintiff’s employment to have been put on by himself, without knowing whether it had been seen by the plaintiff or not. It is, however, very probable as the plans were kept in the office, that this fact had come to the plaintiff’s knowledge. A letter was also produced written by the defendant in which the work was referred to as that of her husband, with the explanation that it was written by her for the reason that he had left Hew Orleans on that morning for Florida. To maintain the plaintiff’s action reliance was also placed upon a telegram from the defendant. This was sent to her husband who was at Jacksonville in Florida. Its language was: 1 £ Doty telegraphs the lowest contract for interior finish $5,911. Shall I sign contract? Answer him. Probably here. ” But this despatch contains no indication whatever that the work was being done at the instance of or for the defendant. It assumes, on the contrary, the work to be that of her husband, from whom she requests instructions as to what she may do. It was also shown that both of those persons made payments to other persons upon the work as it progressed, but generally they were by the defendant’s husband. How she came to make the payments was not explained, otherwise than by the fact that she received upon one occasion from her husband a check for the sum of §5,000.
This evidence, together with the fact that the addition was to be made as a room for the defendant’s husband, was strikingly at variance with the idea that she was the person who, by reason of the conversation transpiring upon the single occasion when she was met by the plaintiff, became hable to him for the performance of his services.
The plans for the work emanating as they did from the plaintiff's own office, the estimates which he obtained, the correspondence passing between himself and the husband, all indicate as well as emphasize the fact tobe, that the work was not only to be done for him, but that it was throughout so understood by the plaintiff himself, and under these circumstances the court was not required to submit the case to the jury for them to conjecture, or speculate upon a mere probability whether the defendant had *24 not incurred a liability for the plaintiff’s services. The evidence was too uniformly against him, which w;as reliably furnished by the documents introduced into the case in the course of his own examination as a witness.
Their effect was to overcome what may be described as an ambiguous interview between the- plaintiff and the defendant, concerning this work, and to settle the question against him that it was the work of the husband, and so recognized by him throughout, and for which he alone should be held accountable.. As the proof appeared, the court was right in withdrawing the case from the consideration of the jury. This general subject was considered in Wilds v. Hudson River R. R. Co. (24 N. Y., 430), where in the course of the prevailing opinion it was held, that where the court would be justified in setting aside a verdict as clearly against the weight of evidence, it was its duty to nonsuit the plaintiff. Id., 433. And the same rule was declared in Dey v. N. Y. Central R. R. Co., 34 N. Y., 9. The authorities were there examined, and the result was stated to be that “if the evidence is not sufficient to warrant, a verdict, or if the court will set aside a verdict if found, it is the duty of the court to nonsuit a plaintiff. Id., 13. It is true that this rule was not followed in Colt v. Sixth Av. R. R. Co., 49 N. Y., 671. But as these authorities do not appear to have been intended to be overruled by this decision, and the rule seems to be founded in good sense, the case in which this last decision was made may be considered tó be exceptional, on account of some peculiar circumstances, not appearing by the report. The rule itself is further maintained by Wombough v. Cooper (2 Hun, 428) and by Commissioners, etc., v. Clark, 94 U. S., 278. There also the authorities were examined, and they were considered to maintain the proposition which has been stated. It was there added that “decided cases may be found where it is held that if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury,” but the modern decisions have established a more reasonable rule, to wit: that before the evidence is left to the jury there is, or may be, in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Id. 284.
The evidence in this case concerning the employment of the plaintiff by the defendant is not only of this infirm character, but by that which was written and forms the most reliable basis of what was the plaintiff’s relation to this work, this slender evidence was wholly overthrown, *25 and it was the duty of the court to exercise its authority, as it did, and dismiss the plaintiff’s complaint.
The judgment appealed from should consequently be affirmed.
Brady, J., concurs.