### PACIFIC LUMBER CO. v. MOFFAT.

(Circuit Court of Appeals, Eighth Circuit. December 5, 1904.)

#### No. 1,973.

PRINCIPAL AND AGENT—POWERS OF AGENT—CONTRACT IN FRAUD OF PRINCIPAL.

Defendant's agent in charge of a lumber yard, pursuant to an agreement between him and an agent for plaintiff, signed an order on plaintiff in defendant's name for a large quantity of shingles at prices in excess of the market price, the purpose being to compel defendant without his knowledge to pay a debt due plaintiff by a former owner of the yard, which was insolvent. The order was accepted by plaintiff's agent, and placed in escrow to be delivered when defendant's manager should quit his employment, but, so far as shown, it was never delivered. *Held,* that defendant's manager, however broad his authority in the management of the business, had no power to bind him to pay the debt of another; and that the order, never having been ratified by defendant, was wholly fraudulent and void, and would not support an action to recover damages for its breach, although defendant's manager without his knowledge had accepted and paid for certain shipments thereunder.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, §§ 313, 314, 589–592.]

In Error to the Circuit Court of the United States for the District of Colorado.

The Pacific Lumber Company, plaintiff in error, and plaintiff below, is a California corporation engaged extensively in the manufacture and sale of redwood lumber and shingles, and during the year 1897 had made large sales of such products to the Chicago Lumber Company of Denver, which at the end of January, 1898, was indebted to the plaintiff in about the sum of $2,700. On January 31, 1898, the Chicago Lumber Company, having become insolvent, to provide for the payment of its indebtedness to a Denver bank of which the defendant, Moffat, was a managing officer, sold, transferred, and delivered to the said Moffat its entire stock of lumber and shingles and all its assets, and thereupon the said Moffat, as successor of the Chicago Lumber Company, engaged in the business of dealer in lumber, shingles, and lumber products at the same place in Denver, and employed as his agent in the management of said business one B. F. Vreeland, who had been one of the officers of the Chicago Lumber Company, and in the general charge of its business. The plaintiff, upon learning of the insolvency of the Chicago Lumber Company and the sale of its entire stock in trade and assets to the defendant, sent L. D. McDonald, its agent in charge of its Eastern sales, to Denver to endeavor to get payment or security for the said indebtedness of the Chicago Lumber Company to the plaintiff. It was the purpose of Moffat, known to Vreeland, to soon transfer and turn over to a new corporation, to be formed for that purpose, the stock in trade and business of dealing in lumber and lumber products which Moffat was then carrying on in his own name. The plaintiff's agent, McDonald, conferred with Vreeland, whom he found in charge of the defendant's business, respecting the indebtedness of the Chicago Lumber Company to the plaintiff, and, in accordance with an agreement then made between said McDonald and said Vreeland, a written order was then made, dated at Denver, February 12, 1898, signed "D. H. Moffat, By B. F. Vreeland, Agent," directing the Pacific Lumber Company

to ship and charge to D. H. Moffat or his incorporated successor, Denver, Colo., 90 carloads "Clear" and "Star A Star" redwood shingles, averaging 150,000 shingles to the car, at the prices of $2.40 per thousand for "Clears" and $2.20 per thousand for "Star A Star," delivered at Denver, the brands to be named later; terms, 60 days, or 2 per cent. discount for cash. This order was, in writing at the foot thereof, accepted for the Pacific Lumber Company by L. D. McDonald, agent. At the time of such making and acceptance of said order, the market value at Denver of "Clear" redwood shingles was $2.20 per thousand, and of "Star A Star" redwood shingles $2 per thousand. The excess of 20 cents per thousand above the market prices at the date of the order amounted upon the whole order to $2,700, and it was the expressed purpose and intention of the said McDonald and said Vreeland to thus enable the plaintiff to obtain from Moffat, over and above the market value of the shingles so ordered, the whole amount owing to plaintiff by the insolvent Chicago Lumber Company. The said order, though accepted as aforesaid, was not delivered, but was put in a sealed envelope and inclosed in a letter to one C. R. Johnson, of San Francisco. The letter is as follows:

"Denver, Colo., Febry. 12, 1898.

"C. R. Johnson, Esqr., S. F., Cal.—Dear Sir: We enclose in sealed envelope a document which we desire to place in your hands as escrow holder—to be delivered to Pacific Lumber Co. of your city at such time as Mr. Vreeland may cease his connection with D. H. Moffat or his successor in lumber business in Denver, Colo., otherwise to hold same until such time as you may be called upon to deliver the document referred to—to either party on an order signed by both the parties whose signatures are appended.      B. F. Vreeland,
"L. D. McDonald."

The defendant, Moffat, had no knowledge nor information of the making or acceptance of said written order, and it was the purpose and intention of the said Vreeland and McDonald to keep the defendant in ignorance thereof until such order should be delivered to the plaintiff by said Johnson pursuant to the terms and directions of their letter to said Johnson above quoted.

The defendant, Moffat, gave very slight attention to this lumber business at Denver during the time it was carried on in his name, but it was practically under the control and management of said Vreeland, who, in Moffat's name, bought of plaintiff several invoices of lumber and lumber products, which were paid for, and, among them, received and caused to be paid for four car loads of shingles as delivered on said written order. About April 1, 1898, Moffat's lumber business and lumber stock in Denver was turned over and transferred to the Chicago Lumber & Manufacturing Company, a new corporation, of which said Vreeland became president and manager.

Later, the defendant refused plaintiff's demand that he receive and pay for 86 car loads of shingles at prices such as are named in said written order, and this action was begun to recover $4,515, the excess of the prices fixed in said written order above the market price of the same shingles at Denver when this action was begun. Defendant had never authorized nor in any way ratified the said written order, and never learned of its existence until October, 1898, and was not fully apprised of its terms until after this action was begun.

All these matters appeared in the testimony introduced by plaintiff upon the trial, and it did not appear that said written order had ever been delivered to the plaintiff, or that it was not still held by said Johnson as directed in the above quoted letter to him. After plaintiff had rested, the jury, under the direction of the court, returned their verdict for the defendant.

J. E. Robinson (William H. Jordan, on the brief), for plaintiff in error.

Gerald Hughes (Charles J. Hughes, Jr., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

The order by Vreeland, as agent of defendant, upon plaintiff for 90 car loads of shingles at prices 20 cents per thousand above the then market prices, and the acceptance of the order by McDonald as plaintiff's agent, was the means then devised and adopted by those two persons purposely to defraud the defendant by causing him to pay the indebtedness of about $2,700 then owing to plaintiff by the insolvent Chicago Lumber Company, in which debt the defendant had no concern. Vreeland's authority as agent to purchase and sell lumber and shingles and to manage that business for defendant, however general, did not authorize him to obligate and bind his principal to pay the debt of another. Mechem on Agency, §§ 307, 313, 392, 400. The testimony of plaintiff's agent, McDonald, shows clearly that this was the scheme agreed upon between these persons, and that they figured carefully the amount of shingles on which the excess price of 20 cents per thousand would cover that debt of the Chicago Lumber Company, and made the order for the amount of shingles which would accomplish that result. The personal letter of McDonald to Vreeland of August 19, 1898, speaks plainly of this device. The alleged contract upon which this action is based was therefore entered into by defendant's agent without authority, and was palpably fraudulent and void as to defendant, the fraud being participated in by plaintiff through its agent. There is in the evidence no color for claiming that it was ratified by defendant, and, indeed, he could not have ratified it, as he was without knowledge of its terms and the circumstances under which it was entered into. Plainly, the moving purpose for entering into this contract between these two agents was to defraud the defendant. There is nothing in the case to indicate that the business of defendant then, or for any reasonable time in the then future, could call for such a large quantity of shingles, if they could be had at or even somewhat below the then market price. The contract was indefinite as to when they were to be delivered. The definite matter agreed on was that defendant should be made to pay the debt of the insolvent company. Not only was all knowledge of the contract kept from defendant, but it was agreed that, while Vreeland should continue in the employ of defendant or of the corporation which was expected soon to succeed him, the contract should not be delivered to the plaintiff, but, unless sooner called in by order signed by Vreeland and McDonald, should remain in escrow in the hands of Johnson, to whom it was then transmitted by express, and in whose hands, and never, so far as appears, delivered to plaintiff, it still remains. This secrecy in respect to the contract for the sale of shingles is convincing evidence that the two agents fully appreciated its fraudulent character. Because the alleged contract was fraudulent and void, and because it never took effect by delivery, there was no evidence upon which a verdict for plaintiff could have been supported, and the direction of a verdict for the defendant was right. Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59.

The particular assignments of error not abandoned on the argument have been considered, and are not sustained.

The judgment is affirmed.