QUEEN ANNE'S RAILROAD COMPANY, defendant below plaintiff in error, *vs.* MARY E. REED, plaintiff below defendant in error.

*Railroads—Crossing—Accidents—Contributory Negligence—Error — Question for Review.*

1.  Under the decisions in this Court, the action of the lower Court upon a motion for a nonsuit is not reviewable.

2.  The mere fact of an accident by which an injury is sustained, if not within the control of the defendant, does not in itself raise a presumption of negligence.

3.  The burden of proving negligence rests upon the plaintiff.

4.  Negligence defined.

5.  It is for the Court to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred, and it is for the jury to say whether, from those facts, when submitted to them, negligence ought to be inferred.

6.  If the plaintiff fails to produce evidence of negligence of the defendant, or if no fair inference of negligence can be drawn from the evidence favorable to the plaintiff, it becomes the duty of the Court to nonsuit the plaintiff.

QUEEN ANNE'S R. R. vs. REED. . 227

SYLLABI.

7. If there is evidence of negligence from which the jury can properly find a verdict, or if the conclusion to be drawn therefrom is debatable, or if the evidence is conflicting in regard to any material fact, it should be submitted to the jury.

8. The burden of establishing contributory negligence whenever relied upon in defense of the action, rests upon the defendant, but proof of such negligence may arise out of the testimony of the plaintiff in the first instance.

9. Whether contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact, must necessarily be controlled by the facts and circumstances of the particular case.

10. The law regards a railroad crossing as a place of danger.

11. A person attempting to cross at a railroad crossing is required, at least, to look and listen for an approaching engine or train, before venturing to cross the track.

12. A person attempting to cross at a railroad crossing, failing to look and listen for an approaching engine or train, incurs the peril of whatever danger he could thereby have discovered and avoided, and for an injury arising from such fault he is left without remedy.

13. The fact that the view of the railroad at the crossing is obstructed does not relieve the traveler from the obligation to look and listen for an approaching train.

14. The observance of the legal duty to look and listen applies as well to a special as a regular train.

15. The right of a railway company at a highway crossing is superior to that of a traveler upon the highway.

16. The superior right of a railway company at a highway crossing does not relieve the company from reasonable caution to prevent accidents at such crossings. The degree of care may be affected by obstructions which prevent an approaching train from being seen.

17. Both the traveler and the company are charged with the same degree of care—the one to avoid being injured, and the other to avoid inflicting injury. The care of each must be commensurate with the risk and danger involved.

18. In the absence of direct testimony or rebutting circumstances, a person, n attempting to cross a railroad track at a highway crossing, and being injured, is presumed to have exercised reasonable and ordinary care in doing so.

19. If negligence, in fact, existed on the part of the person injured, it must be shown by positive evidence, or from the attending circumstances of the accident.

20. The testimony of a witness who says without qualification that he heard the whistle of a passing engine, at or near a point mentioned, is of much more weight than that of a witness who merely says that he did not hear the whistle, which might be reasonably attributable to want of attention at the time.

21. A witness may be in any conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight.

22. The failure of a person to make any effort to ascertain whether a train is approaching a highway crossing at the time he is attempting to cross over will defeat his right to recover for injuries received as a result of his contributory negligence.

( *January 18, 1905.* )

NICHOLSON, Ch., and SPRUANCE and BOYCE, J. J., sitting.

*Charles W. Cullen* and *Archibald H. Taylor* (of the Maryland bar) for plaintiff in error.

*Robert C. White* for defendant in error.

Supreme Court, June Term, 1904.

WRIT of ERROR to the Superior Court in and for Sussex County.

BOYCE, J., delivering the opinion of the Court:

This action was brought in the Superior Court for Sussex County by Mary E. Reed, widow of John W. Reed, deceased, the defendant in error, against the Queen Anne's Railroad Company, the plaintiff in error, for the recovery of damages for the death of the said John W. Reed, alleged to have been occasioned by the negligence of the defendant company.

The real contention of the plaintiff raised under the pleadings and the evidence, being that the whistle was not sounded and the bell was not rung, if at all, at such a time and place as to give due and proper notice of the approach of the locomotive and cars attached, and that the said locomotive and cars were moving at a dangerous rate of speed immediately before and at the time they

approached and passed over the crossing at which the accident oc-
curred.   There was neither allegation nor attempt to show that the
servants of the company either saw, or, in the exercise of reasonable
care, might have seen the deceased in time to have avoided the ac-
cident ; nor were the servants charged with neglect of duty from
the time the peril of the deceased was seen, or might have been
seen, up to the time of the accident.

When the plaintiff had rested her case, the defendant moved
for a nonsuit, on the ground that the testimony produced by her
showed either (1) that the injury complained of was the result of
an inevitable accident, or (2) that the deceased was guilty of con-
tributory negligence.   The Court, in disposing of the motion, said :
"Under the testimony, this is a very close case ; but as it stands we
must decline to grant a nonsuit, and will let you go to the jury."
It may be said here that the refusal to grant the nonsuit is not be-
fore this Court, because under our decisions, the action of the Court
upon a motion for a nonsuit is not reviewable.   At the close of the
case, the defendant presented several prayers for instructions, the
last of which was "That the Court instruct the jury to render a
verdict for the defendant."   The case was, however, submitted to
the jury under the charge of the Court.   There are several assign-
ments of error, but at the hearing in this Court, counsel for the de-
fendant confined themselves to the last—"For that the Court erred
in refusing to charge the jury to render a verdict for the defendant
as requested"—it being contended that the evidence introduced by
the plaintiff, and not affected by that offered by the defendant,
otherwise than to strengthen it, clearly showed that the defendant
was not negligent at the time of the accident, but on the contrary
that it was the negligence of the deceased which occasioned the
collision and his death at the crossing.

A very short time before the accident, which occurred between
the hours of four and five o'clock in the afternoon, on the ———
day of March, A. D. 1901, the deceased, being in a fall-top car-
riage, drawn by a horse, was seen driving along Federal Street,
towards his farm, the place of his residence, some distance, in a

southerly direction, from the town of Milton. In his attempt to pass over what is known as Federal Street crossing, which is formed by the intersection of said street or highway and the tracks of the defendant company, an engine with a tender and a passenger coach attached, collided with the carriage, demolishing it, and he was, it appears, instantly killed. His body was ·seen, very soon thereafter, lying on the north side of the track, about one hundred and fifty or two hundred feet westerly of the crossing. The horse escaped with a slight injury. The track of the defendant company is laid along the southern edge of the town, in a sparsely settled part thereof, and extends in an easterly and westerly direction. The train was a special which had come from Lewes, on its way westward to Queenstown, and was running, when near the station, ˙which is seven hundred and fifty-five feet east from the place of the accident, at a rate of .speed, varying under the evidence, from twenty-five to forty-five miles an hour. The station was located adjacent to the Chestnut Street crossing, and at a short distance east therefrom, there stood a small tool house. The freight house was located west of the station, and the western end thereof was five hundred and thirty-eight feet from the Federal Street crossing. A warehouse stood a very short distance west of the freight house. It seems that all these buildings were on the north side of the track, between the latter and the town. On the east of Federal Street crossing, a distance of two thousand feet therefrom, and twelve hundred and forty-eight feet from the station, there was a branch, crossed by what several of the witnesses called the trestle work, it being a bridge, which was hidden from both Chestnut and Federal streets by a woods, the western edge of which was five hundred and seventy-five feet from the Chestnut Street crossing, and thirteen hundred and thirty feet from the Federal Street crossing. At the time of the accident, several of the witnesses, mostly for the plaintiff, were loading cars with hickory butts, on a side track or switch, some fifty or seventy-five yards east of the station. Blizzard and his wife, who, as well as the other persons hereinafter named in this statement, being witnesses for the plaintiff, were at

their home twenty or thirty yards south of the Federal Street crossing; Van was in his home, located on the west side of Federal Street, about two hundred feet from the crossing; Simpler was at his home, known as the Oliver house, on the west side of Federal Street, about two hundred and sixty-five feet from the crossing; William H. Bailey was likewise at his home, about one thousand feet west and abreast of the crossing and three hundred feet from the track; and King was on Chestnut Street in a wagon going toward the station, about a hundred and fifty or two hundred yards therefrom. From Van's house, on the east side of the street, and nearly down to the railroad, there was a row of trees, mostly cedar, eight or nine in all, varying from six to twenty-four feet apart, with under-bushes and briars, six to eight feet high, growing between them, for a distance of about forty feet from the railroad towards the house. The railroad, as it approached the crossing, was not on a level with the surrounding country, but ran through a cut which began above the freight house, and at the crossing the top of the rail' was three feet below the level. Federal Street ran along the western side of a hill or elevation. There was an ascent from the crossing on Federal street towards the town for a distance of two hundred and fifty feet when a level was reached. The highest point in the elevation on the eastern side of said street, within twenty or thirty feet of the centre of the railroad, at the crossing, was about five feet above the top of the rail. At the centre of said street, one hundred and twenty-five feet distant from the crossing, the highest point in the elevation, looking towards the station, was said to be about six feet.

The mere fact of an accident by which an injury is sustained, if not within the control of the defendant, does not, in itself, raise a presumption of negligence.

*Bahr vs. Lombard, 53 N. J. L., 233.*

And it is necessary that the plaintiff should have both alleged and proved negligence, on the part of the defendant, to entitle her to a recovery; for the burden of proving negligence rests upon the plaintiff.

Negligence has been defined to be the want of ordinary or reasonable care in the respect of that which it is the duty of the party to do or leave undone. To reach a determination of what negligence is, Judge Cooley in his work on Torts, says: "We are not to look solely at a man's acts or his failure to act; the term is relative, and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose. That the degree is not the same in all cases; it may vary according to the danger involved in the want of vigilance." He further adds, "Negligence in a legal sense is no more nor less than this: The failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

Whether there was any negligence, at the time of the accident, and whose, must be determined from the evidence under all the facts and circumstances of the case.

It is for the Court to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred; and it is for the jury to say whether from those facts, when submitted to them, negligence ought to be inferred.

*Metropolitan Ry. Co. vs. Jackson, 3 App. Case., 193; Creswell vs. W. & N. R. R. Co., 2 Pennewill, 210.*

If the plaintiff fails to produce any evidence of negligence, on the part of the defendant, or if, as it has been said, no fair inference of negligence can be drawn from the evidence favorable to the plaintiff, assuming that such evidence is true, it becomes the duty of the Court to nonsuit the plaintiff, or to direct a verdict for the defendant.

*Comm. vs. Clark, 94 U. S., 284; Randall vs. Balto. & Ohio R. R., 109 U. S., 482.; Wheatley vs. Phila., Wil. & Balto. R. R., 1 Marv., 315; and Creswell vs. W. N. R. R. Co., supra; Tully's Adm. vs. P. W. & B. R. R. Co. 2 Pennewill 532.*

If there is any evidence of negligence, upon which the jury can properly find a verdict, or if the conclusion to be drawn therefrom is debatable, or rests in doubt, though the facts are undisputed, or if the evidence is conflicting in regard to any material fact, it becomes a question of fact for the determination of the jury.

*Vinton vs. Schwab, 32 Vt., 612 ; The Penn. R. R. Co. vs. Matthews 36 N. J. Law, 531 ; D., L. & W. R. R. Co. vs. Shelton, 55 N. J. L., 343 ; Schofield vs. Chic., M. & St. Paul R. R. Co.. 114 U. S., 615.*

Although the plaintiff may show that the injury complained of was in consequence of the negligence of the defendant, yet it does not conclusively determine that the injury was legally attributable to such negligence, because it may equally appear that the injury was due to the fault or negligence of the person injured. This brings us to the consideration of contributory negligence, the burden of establishing which, whenever it is relied upon in defense of the action, rests upon the defendant ; proof of such negligence may, however, arise out of the testimony of the plaintiff in the first instance.

It is quite impossible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case. And the Court will not decide it as one of law, although the weight of the evidence may seem to be on one side or the other, if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. In such a case the Court will not, and should not, attempt to weigh and determine the effect of the evidence involved in the issue of fact. For under such circumstances the question clearly falls within the province of the jury.

*Penna. R. R. Co. vs. Middtetown, 57 N. J., Law, 158 ; Penna. R. R. Co. vs. Matthews, 36 N. J. L., 531; and Dela. etc. R. R. Co. vs. Shelton, 55 N. J. L., 342.*

If, however, it clearly appears from the evidence that there was contributory negligence, proximately entering into and contributing to the accident, at the time of its occurrence, it is the duty of the Court to so find, as a matter of law.

In short, ordinarily in actions for personal injuries, the cases are exceptional when the Court is warranted in ordering a nonsuit, or directing a verdict for the defendant; and such cases are confined to those where it is clearly manifest as a conclusion of fact, or by necessary exclusive inference, that those acts which the law regards as negligent have not been shown, or to those in which contributory negligence has been shown.

*Palys vs. Erie Ry. Co., 30 N. J. Eq., 604; and Penna. R. R. Co. vs. Righter, 42 N. J. L., 180.*

The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise, of his senses of sight and hearing for his own and others safety and protection ; and he is required, at least, to look and listen for an approaching engine 'or train before venturing to cross the track. And, if, as it has been said, he fails to exercise such ordinary care, whatever danger he could thereby have discovered and avoided, he incurs the peril thereof, if he proceeds, and for an injury arising under such fault, he is left without remedy.

*Pa. R. R. Co. vs. Middleton, 57 N. J. L., 154.*

In Cooley on Torts, at page 680, it is said: "One about to cross a railway track by the public highway, where the liability to collision is great, will be held precluded, by his contributory negligence, from a recovery for an injury, if he drives upon the track without looking for an approaching train, even though the railway company has neglected to sound the alarm which the statute requires of it at such places."

*See also Salter vs. R. R. Co., 75 N. Y., 273; R. R. Co. vs. Miller, 25 Mich., 290; Allyna s. R. R. Co. 105 Mass., 79; and R. R. Co. vs. Butler, 2 N. E. Rep., 138; Penn. R. R. Co., vs. Matthews, 36 N. J. L., 531.*

Although the view of the road is obstructed that fact does not relieve the traveler from the obligation to look and listen for an approaching train. And the observance of this legal duty applies as well to a special as a regular train. (*Schofield vs. R. R. Co., 114 U. S., 615.*) The very fact of the existence of such obstruction and particularly when it is known to the traveler, imposes additional care and caution upon him on approaching the track.—*Beach on Con. Neg., 65.*

The right of a railway company at a highway crossing is superior to that of a traveler upon the highway. Rapid transit for the convenience of the traveling public and for the quick transportation of freight and produce necessarily make this so. Yet this superior right does not relieve the company from reasonable and ordinary caution to prevent accidents at such crossings. And this degree of care may be affected by obstructions which prevent the track from being seen as a train approaches. Both the traveler and the company are charged with the same degree of care—the one to avoid being injured, and the other to avoid inflicting injury.

*8 Am. & Eng. Ency of Law, 387.*

There is not only the danger incident to the passing and repassing of regular trains at highway crossings, but, in the management and business of railroads, trains may be delayed and special trains are liable to be sent out at any moment, and, therefore, the danger to be avoided at such crossings calls for prudent watchfulness and caution on the part of both the company and the traveler ; for the want of care by either would be equally liable to result in an injury. And the care of each must be commensurate with the risk and danger involved. And when it is known to the traveler and servants of the company that a crossing is very dangerous by reason of its surroundings, it is incumbent upon both parties to exercise additional care and caution.

There is a presumption, quite generally recognized, that, in the absence of direct testimony, or rebutting circumstances, a person, in attempting to cross a railroad track at a highway crossing, and being injured, exercised reasonable and ordinary care in doing so. If negligence, in fact, existed on the part of the person injured, it must be shown by positive evidence, or from the attending circumstances of the accident.

*Penna. R. R. Co. vs. Middleton, 57 N. J. L., 154.*

After a careful examination of the evidence, it conclusively appears that the defendant company gave notice by bell and whistle of its approach to the crossing at which the accident occurred; while, it is true, several of the plaintiff's witnesses were near enough to have heard the whistle, if blown for the crossing, at or near, the said branch, east of the station, yet they did not hear the whistle, or if they did, to use their language, they "did not pay any attention to it," or "did not take any account of it."

Those witnesses, however, failed to testify affirmatively and unqualifiedly that no such whistle was sounded. On the other hand a number of the plaintiff's witnesses testified without qualification that they heard the whistle at that point. The testimony of the latter witnesses is, of course, of much more weight than that of those who merely say they did not hear the whistle, which might be reasonably attributable to want of attention at the time;—such negative testimony is usually of very little value.

Upon this point, it was said in the case of *Menard vs. Boston & Maine Railroad, 150 Mass., 386,* "ordinarily all that a witness can say, in such a case, when called to prove that a bell was rung, is that he did not hear it. Such a statement, with no accompanying facts, is merely negative, and of no value as evidence. But attending circumstances may be shown which make the statement strong affirmative evidence. It may appear that all the attention of which the witness was capable was concentrated on the effort to ascertain whether the bell was rung, and his failure to hear it could only have been because it made no sound. A witness may be in any

conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight."

The speed of the train was variously estimated from 25 to 45 miles an hour. The estimate as to the rate of speed of a passing train by persons standing near the track at the time, having no experience or training in that respect, is usually very inaccurate and untrustworthy. It does not appear, however, from the evidence, that the train was moving at a greater rate of speed than is usual in these days of rapid transit, where there is no restriction by statute or ordinance, and where no special dangers are to be apprehended.

It may be debatable whether the evidence, considered in its entirety, discloses any negligence on the part of the defendant company; and yet it is not altogether manifest that there was such an entire absence of negligence as to have made it the duty of the Court to take the case from the consideration of the jury on that ground. Whether there was or was not any negligence on the part of the defendant company, it is manifest from the evidence that there was nothing in the conduct of the defendant company which in any way relieved the deceased from the exercise of reasonable and ordinary care in approaching the crossing, or which in any manner affected him in the control of his actions at or immediately before the fatal accident. It appeared from the uncontradicted testimony that the Federal Street crossing was below the surrounding country; that, in approaching the crossing, there was an elevation on the east side of Federal Street from three to six feet, and likewise on the same side of the street there was a growth of trees, bushes, and briars, hereinbefore more minutely set forth, which materially obstructed the view of the railroad in the direction from which the train was approaching. It further appears that the decedent resided in the neighborhood, and frequently traveled along the said road or street, and over the crossing, and he was therefore acquainted with the surroundings. Under these circumstances it was obligatory upon him to use a higher degree of care and caution than would have been necessary in traveling upon a highway approaching a railroad where both were on a level with the

surrounding country, and where the view to an approaching train was clear and unobstructed. While, as it has already been said, in the absence of evidence to the contrary the usual presumption is that one approaching a railroad has exercised due care and caution, in this case the Court is not left to such a presumption alone, in determining the question of the diligence or negligence of the deceased, as we have the uncontradicted testimony of eye-witnesses as to his conduct immediately before and at the time of the accident. Van, a witness for the plaintiff, who lived at the time, as we have already shown, within 200 feet of the crossing, saw the deceased pass in front of his window as he was approaching the crossing immediately before the happening of the accident. This witness says; "The decedent was going very slowly when he passed my house—just about jogging along"—which we understand to mean a slow trot. Witness heard the train blow immediately after the decedent had passed his house. The blow was for the station when he first heard her blow, which he heard very plainly. He afterwards heard the whistle blow once or twice very sharp. He went out to see whether the man intended to get across, or not, before the train had got there. Mr. Reed was somewhere near half-way, after he came out on hearing the sharp blows, and. was in his sight clear until the engine struck him. The horse seemed to be in a dead-level run. He did not see him make any stop at all—kept right on running. He jumped the track in the same way when his carriage was struck by the engine. Did not see him look to either side. Witness was asked : "Did you see him look, or trying to listen, when you saw him out of your window? A. No, sir; his head was down. Did not seem to be taking any notice at all—sitting there." This witness was the only person who was near and saw the deceased, at and shortly before the accident, but his testimony in respect of the speed at which he was going is confirmed by two witnesses who were at the said railroad switch, east of the station. Elias Baily, a witness for the plaintiff, said, "I am like Mr. Carey. We happened to spy the top of his carriage going along the road. Q. How long did you continue to look at it? A. Not

QUEEN ANNE'S R. R. vs. REED.        239

OPINION.

very long, because the station cut it out of our sight. Q. Was the horse trotting or running? A. I could not say that. It was going along a good gait—a good ordinary gait." Collins, a witness for the defendant, said: "I saw the carriage. I did not see the horse. I just got the glimpse of the carriage, and some one said there was a horse running on the other street. I jumped up on the log and looked across, and got a glimpse of the carriage. It was somewhere about Van's house, I think, or somewhere in that direction. It was John W. Reed's horse and carriage. I could not tell how fast the carriage was going along. They said it was running. I don't just remember who it was. Some of them called my attention. They said, 'There goes a horse running.' The horse had got too far south, and behind the hill and those bushes. I thought he (Reed) was running a pretty dangerous risk along there, the way he was going with the cars coming there."

This testimony as to the conduct of the deceased is wholly without contradiction. The reasonable explanation of the increase of speed when the deceased was within 100 feet of the railroad crossing is that he then became conscious of the fact that a train was approaching, and that he attempted thereby to clear the crossing before the train reached that point. If this was so, it was a clear case of negligence. He might have stopped or turned aside; but if, instead of doing so, he attempted a race with a locomotive, he did so at his own risk, and the defendant company is not responsible for the consequences of such conduct. Whether the speed at which he is proved to have approached the crossing did or did not indicate an intention to cross ahead of the train, it certainly shows a lack of that care and caution which were obligatory upon him under the circumstances at that time. Indeed, it seems quite inevitable from the evidence that there was a total absence of reasonable care and caution on the part of the deceased in approaching the crossing, in that he made no effort whatever to ascertain whether a train was approaching, or to avoid the danger imminent at the time he attempted to make the crossing.

We are therefore clearly and unanimously of the opinion that even if the defendant company was guilty of any negligence, which for the purposes of this case, it is not necessary for us to determine, the record unmistakably discloses that the deceased was himself guilty of such contributory negligence as defeats the right to recover in this action.

The judgment of the Court below is reversed.